Commonwealth *v.* Richbourg, Appellant.

148

Submitted September 28, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

R. Stanton Wettick, Jr., and George Patterson, Jr., for appellant.

Carol Mary Los and Robert L. Campbell, Assistant District Attorneys, and Robert W. Duggan, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, March 18, 1971:
This is an appeal from an order dismissing, after hearing, a petition filed under the Post Conviction

Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, §1 *et seq.*, 19 P.S. §1180-1 *et seq.* (Supp. 1970). The Superior Court affirmed, per curiam, with a dissenting opinion by Judge HOFFMAN. *Com. v. Richbourg*, 217 Pa. Superior Ct. 96, 266 A. 2d 534 (1970). We granted allocatur.

In 1961 petitioner was indicted for rape and brought to trial before a judge and jury. The lower court, after hearing closing arguments, postponed its charge until the next morning. During that evening, the Assistant District Attorney prosecuting the case received a telephone call from the husband of the complainant accusing the Assistant District Attorney of not having properly tried the case and of compromising the Commonwealth's position in his closing argument to the jury. The next morning the Assistant District Attorney informed the lower court of the telephone conversation and stated that "there exists the possibility that I may have over-simplified this thing" and ". . . perhaps the prosecution erred against the complainant, or the victim, in usurping the function of the jury in expressing a doubt, an honest doubt, which we had as a result of the evidence in this case." The lower court then granted, over defense counsel's objection, the Commonwealth's request for the withdrawal of a juror.

Notwithstanding his pretrial plea of former jeopardy, petitioner was later retried, convicted of rape and sentenced to a term of imprisonment of not less than seven and one-half years nor more than fifteen years. His post-trial motion was also dismissed by the lower court.[1]

---

[1] Direct appeals were taken to the Superior Court but were nonprossed due to the failure of defense counsel to file briefs. Thereafter, but before this post-conviction relief petition, petitions for writs of habeas corpus were filed and dismissed by both the Common Pleas Court of Allegheny County and the United States District Court for the Western District of Pennsylvania.

In this appeal we are first asked to consider whether the federal prohibition against double jeopardy, made applicable to the states by *Benton v. Maryland,* 395 U.S. 784 (1969), requires retrospective application. Secondly, if *Benton* must be applied retroactively, we must then question whether petitioner's retrial was constitutionally permissible.

Prior to *Benton,* it was the position of the United States Supreme Court, enunciated in the landmark case of *Palko v. Connecticut,* 302 U.S. 319 (1937), that the double jeopardy prohibition contained in the Fifth Amendment did not limit the power of a state to reprosecute a criminal defendant. *See, also, Brock v. North Carolina,* 344 U.S. 424 (1953).[2] Accordingly, a person accused and retried by this Commonwealth for the same crime could only look to the double jeopardy clause of Article I, §10 of the Constitution of this Commonwealth for relief.[3] Whereas the Fifth Amendment provision was early construed to preclude retrial in both capital and noncapital cases, *Ex Parte Lange,* 85 U.S. (18 Wall.) 163 (1874), this Court had consistently interpreted Article I, §10 as applicable to only capital cases. *Com. v. Simpson,* 310 Pa. 380, 165 Atl. 498 (1933). *See, also, Com. v. Baker,* 413 Pa. 105, 196 A. 2d 382 (1964). Owing to this restrictive interpretation of Article I, §10, the particular significance of *Benton* in the context of this appeal lies in its proscription of double jeopardy in state noncapital offenses.

---

[2] While we were asked to conclude the Fifth Amendment's double jeopardy clause bound the courts of this Commonwealth in *Com. ex rel. Montgomery v. Myers,* 422 Pa. 180, 184, 220 A. 2d 859, 862 (1966), *cert. denied,* 385 U.S. 963 (1966), we found it "unnecessary to anticipate the Supreme Court on this question. . . ."

[3] That section provides: "No person shall, for the same offense, be twice placed in jeopardy of life or limb. . . ."

Since petitioner's retrial occurred years before *Benton* was handed down, we must initially decide if *Benton* requires retroactive application. To date the Supreme Court has not made a clear and precise ruling on this issue.[4] Although the Supreme Court of Missouri has ruled that *Benton* is not entitled to retrospective application, *Spidle v. State*, 446 S.W. 2d 793 (Mo. 1969), several federal circuits have come to the opposite conclusion: *Mullread v. Kropp*, 425 F. 2d 1095 (6th Cir. 1970); *Calloway v. Beto*, 421 F. 2d 284 (5th Cir. 1970); *Booker v. Phillips*, 418 F. 2d 424 (10th Cir. 1969). Rather than rely on these confusing and contradictory precedents, we deem it best to arrive at an independent conclusion.

In *Desist v. United States*, 394 U.S. 244, 248-49 (1969), the Supreme Court noted: "Ever since Linkletter v. Walker, 381 U.S. 618, 629, established that 'the Constitution neither prohibits nor requires retrospective effect' for decisions expounding new constitutional rules affecting criminal trials, the Court has viewed the retroactivity or nonretroactivity of such decisions as a function of three considerations. As we most recently summarized them in Stovall v. Denno,

---

[4] In *North Carolina v. Pearce*, 395 U.S. 711 (1969), the Supreme Court effectively made *Benton* retroactive without specifically addressing the question of retroactivity. Thus, a plurality of three noted in *Ashe v. Swenson*, 397 U.S. 436 (1970): "There can be no doubt of the 'retroactivity' of the Court's decision in Benton v. Maryland. In North Carolina v. Pearce, 395 U.S. 711, decided the same day as Benton, the Court unanimously accorded fully 'retroactive' effect to the Benton doctrine." 397 U.S. at 437 n.1. However, in *Waller v. Florida*, 397 U.S. 387 (1970), the majority noted that neither *Ashe* nor *Waller* resolved the question of *Benton's* retroactivity since that argument was already requested and scheduled in another appeal. 397 U.S. at 391 n.2. Thereafter a unanimous Court, in *Price v. Georgia*, 398 U.S. 323, 331 n.9 (1970), without any retroactivity discussion and citing *Waller*, noted that "Benton has fully retroactive application."

388 U.S. 293, 297, 'the criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards' [footnote omitted].". *See, also, Com. v. Godfrey,* 434 Pa. 532, 254 A. 2d 923 (1969).

Because the extent of reliance by law enforcement officials and the effect on the administration of justice—the second and third factors to be considered—are minimal, our decision devolves upon the purpose to be served by the new standards. Moreover, it was stated in *Desist,* "[f]oremost among these factors is the purpose to be served by the new constitutional rule [footnote omitted]." 394 U.S. at 249.

Citing *Green v. United States,* 355 U.S. 184 (1957), the Supreme Court in *Benton* enunciated the purpose of the Fifth Amendment provision, "one that is deeply ingrained in at least the Anglo-American system of jurisprudence; [to be] that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.". 395 U.S. at 796. *See, also, United States v. Jorn,* 400 U.S. 470 (1971). As well stated by the 6th Circuit: "[w]e think this case goes beyond the concededly important consideration of the integrity of the truth determining process; it goes to the very quick of a long and cherished heritage in the administration of criminal justice, namely, the State's extended deprivation of liberty as the price for demanding successfully a trial process free of Constitutional infirmity." *Mull-*

*reed v. Kropp,* 425 F. 2d 1095, 1099 (6th Cir. 1970). Viewed in this light, we hold that *Benton* must be accorded full retrospective application.

At this juncture we must next decide whether petitioner's retrial violated the double jeopardy clause. The Supreme Court's pre-*Benton* opinions interpreting this provision, now binding on the states, were extensively analyzed by this Court in *Com. ex rel. Montgomery v. Myers,* 422 Pa. 180, 220 A. 2d 859 (1966), *cert. denied,* 385 U.S. 963 (1966), and most recently by the Supreme Court in *United States v. Jorn,* 400 U.S. 470 (1971).

Reiterating the standard of "manifest necessity" first adopted in *United States v. Perez,* 22 U.S. (9 Wheat.) 579 (1824), the Supreme Court in *Jorn,* while unable to establish any clear-cut rules in this area steeped, of necessity, in judicial discretion, did enunciate guidelines for the exercise of that discretion: "In sum, counsel for both sides perform in an imperfect world; in this area, bright-line rules based on either the source of the problem or the intended beneficiary of the ruling would only disserve the vital competing interests of the Government and the defendant. The trial judge must recognize that lack of preparedness by the Government to continue the trial directly implicates policies underpinning both the double jeopardy provision and the speedy trial guarantee. Cf. Downum v. United States, 372 U.S. 734 (1963). Alternatively, the judge must bear in mind the potential risks of abuse by the defendant of society's unwillingness to unnecessarily subject him to repeated prosecutions. Yet, in the final analysis, the judge must always temper. the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." 400 U.S. at 486.

On these facts we are confronted with a classic instance of a criminal defendant being twice placed in jeopardy of conviction and imprisonment. A reading of the record demonstrates that although the Assistant District Attorney believed the case was adequately presented, *he requested the withdrawal of a juror to prevent a possible acquittal.* To accept the position of the Commonwealth, effectively granting second chances to prosecutors who believe their presentation of the evidence is proceeding poorly, would make a mockery of the double jeopardy clause. Accordingly, we conclude there was no "manifest necessity" for the trial judge to abort the first trial and it was an abuse of discretion to order a second.

For these reasons we reverse the order of the Superior Court as well as the order of the lower court and vacate the sentence.

Mr. Justice COHEN took no part in the decision of this case.