## Commonwealth *v.* Bethea et al., Appellants.

162

Argued November 14, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

164

*Daniel H. Shertzer,* for appellants.

*Henry J. Rutherford,* First Assistant District Attorney, with him *Clarence C. Newcomer,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, October 12, 1971:

The appellants herein were adjudged guilty of Contempt of Court in the court below. In each case, a prison sentence was imposed and these appeals were entered. The three cases were consolidated for argument before this Court and will be disposed of in this one opinion.

On April 10, 1969, the appellant, Benjamin Franklin Bethea, Jr., was adjudged guilty of Contempt of Court for conduct occurring on January 27, 1969, and was sentenced to imprisonment for a period of one year. On April 10, 1969, the appellant William Boyer, was adjudged guilty of Contempt of Court for conduct occurring both on January 24 and February 6, 1969,[1] and was sentenced to imprisonment for a period of one year. On April 10, 1969, the appellant, Robert Victor Boyer, was adjudged guilty of Contempt of Court for conduct occurring on April 10th, and was sentenced to imprisonment for a period of three months.

In each case a pretrial motion for a jury trial was denied, and the contempt adjudications were entered following a hearing before a court en banc.

---

[1] Two separate citations against William Boyer were issued by the court. One involved his alleged contemptuous conduct on January 24th and the other for his alleged contemptuous conduct on February 6th. However, a single adjudication of contempt was entered by the trial court and one judgment of sentence was imposed.

The adjudications and sentences in the cases of Bethea and William Boyer must be reversed because the denial of a jury trial in these instances violated constitutional due process. See *Duncan v. Louisiana,* 391 U.S. 145, 88 S. Ct. 1444 (1968), and *Baldwin v. New York,* 399 U.S. 66, 90 S. Ct. 1886 (1970).

In *Duncan,* supra, the Supreme Court of the United States ruled that the Sixth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, requires that individuals accused of "serious offenses" must be afforded the right to trial by jury.[2] This includes those who are accused of criminal contempt. *Bloom v. Illinois,* 391 U.S. 194, 88 S. Ct. 1477 (1968). And an offense for which a term of imprisonment is imposed which exceeds six months is a "serious offense". *Baldwin v. New York,* supra.

We will not now detail the conduct of Bethea and William Boyer that caused the citations for contempt to be issued against them, but it is clear that these acts constituted criminal contempt. See *Knaus v. Knaus,* 387 Pa. 370, 127 A. 2d 669 (1956); *Snyder's Case,* 301 Pa. 276, 152 A. 33 (1930); and *Scouten's Appeal,* 186 Pa. 270, 40 A. 481 (1898).

The trial resulting in the adjudication and sentence of Robert Victor Boyer also violated constitutional due process, but for reasons other than those present in the cases of Bethea and William Boyer. In this case the record discloses the following:

Robert Victor Boyer [a brother of William] was a spectator at the contempt hearings of Bethea and William Boyer. After the sentences were imposed he arose from his seat and proceeded to walk towards the door of the court room. Near the door, he said in a voice

---

[2] The ruling in *Duncan* applies to every trial which commenced on or after May 20, 1968. *DeStefano v. Woods,* 392 U.S. 631, 88 S. Ct. 2093 (1968).

loud enough to be heard by the court reporter, "You will never do it Jack." One of the members of the court directed that Boyer be taken into custody "right away"; that he be searched and "secured"; and, that he be tried for contempt immediately. Since the accused was without counsel, Robert B. Going, Esq., who was also a spectator in the court room was appointed to represent him.

Mr. Going asked the court that he "be given a little time" to study the case, but this request was denied. Court was then advised that Boyer did not wish Mr. Going to represent him and wanted an opportunity to engage and consult his own personal attorney. The court then excused Mr. Going from participating in the case, but refused Boyer's request for time to engage his own attorney. The hearing then proceeded without Boyer having the assistance of counsel. At the conclusion of the hearing, Boyer was adjudged guilty of contempt and was sentenced to serve three months in prison.

Due process required that Boyer have the effective assistance of legal counsel during the proceedings. Assuming arguendo, that the court properly denied Boyer the opportunity of engaging private counsel, the counsel appointed by the court was at least entitled to a reasonable period of time to acquaint himself with the law and the facts in order to effectively represent his client.

Adjudications and judgments reversed.

Mr. Justice COHEN took no part in the decision of this case.

Mr. Justice JONES concurs in the result.

CONCURRING AND DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I concur in the Majority's reversal of the sentence for contempt of Court imposed upon Robert Boyer. I

also agree with the Majority Opinion that the conduct of the appellants Bethea and William Boyer clearly amounted to *direct criminal contempt;* but I cannot agree with the Majority's other holdings or conclusions. (1) A belligerent or boisterous or insulting or disruptive defendant (or witness or attorney) can and should be held for direct criminal contempt of Court, and (2) a sentence of six months or a year can be summarily imposed by the trial Judge (or trial Court) before *Baldwin v. New York,* 399 U.S. 66, without the right of such person to a jury trial, and (3) certainly *Baldwin v. New York* should not be held by this Court to be retroactive.

Because of the nature of this case and the important questions involved, I believe it is wise to set forth at some length the facts, as well as the pertinent and controlling principles of law.

## William Boyer

*William* Boyer was tried (with five other persons, including Benjamin Franklin Bethea, Jr.) on charges of participation in a riot, assault and battery, and aggravated assault on a police officer in an affray, after a high school football game at McCloskey High School. On *January 24, 1969,* the jury returned a verdict of guilty on all three indictments. On February 6, 1969, two petitions for *contempt of Court* were filed by the District Attorney of Lancaster County. The first petition alleged and the Court found that after the jury had announced its verdict in *Commonwealth v. William Boyer,* and while it was being excused, appellant *William* Boyer said to the last *juror,* Eli S. Hart, *as he was leaving the Courtroom,* "*I'll get you and that black Chrysler for this.*"* This statement was not heard by

---

* Italics throughout mine, unless otherwise noted.

the Judge, but the juror reported it to the tipstaff before leaving the Courthouse that day.

The District Attorney's second petition alleged that on *January 29, 1969, during the noon recess of the trial* of *Robert* Victor Boyer for murder committed during the same rioting at McCloskey High School, the appellant *William* Boyer threatened William Smith, a prospective witness in *Robert's* case. Smith was in the corridor outside the Courtroom waiting for the recess to end and to be called to testify. The Court found that appellant *William* Boyer, who was represented by counsel in the contempt hearing, said to (witness) Smith, *"You had better say the right thing or I'll burn your house down and hurt your family."*

These two petitions for contempt of Court were heard before the *Court en banc on April 10, 1969*. At this hearing, appellant *William* Boyer was represented by counsel from the Public Defender's Office. The Court heard extensive testimony concerning what was said to both (a) the juror, Hart, and (b) the prospective witness, Smith. Appellant (*William* Boyer) admitted having spoken to Smith, but denied having made the above-quoted threats to Smith or to Hart. At the close of the contempt hearing, the Court en banc found that the appellant (*William* Boyer) had made *both* of the aforesaid threats and that they constituted "a contempt" of Court. For these *two* threatening and contemptuous statements—one to Hart and one to Smith —which the Majority admit constituted a direct contempt of Court, *William* Boyer was sentenced to the Lancaster County Prison for a period of *one year.** From this judgment of sentence, *William* Boyer took this appeal.

---

* It would have been wiser and more appropriate if he had been sentenced to imprisonment for six months for each of these totally separate criminal contempts, which this Court would have had to sustain without the slightest doubt.

Benjamin Franklin Bethea, Jr.

Appellant Benjamin Franklin Bethea, Jr., was tried, along with *William* Boyer, on charges of participating in a riot, inciting to riot and two counts of aggravated assault and battery. On *January 24, 1969,* the jury returned a verdict of guilty on two of these charges, namely, participating in a riot and one count of aggravated assault and battery. The jury was then discharged. *Three days later,* appellant *Bethea* returned to the Lancaster County Courthouse *to attend the trial of Robert* Victor Boyer. During the noon recess of that trial, Carl *Biechler, one of the jurors in Robert's trial,* was sitting in the corridor outside the Courtroom waiting for the Court to reconvene for the afternoon session. *Biechler had also served on the jury which three days before had found Bethea and William Boyer guilty* of the aforesaid misdemeanors. Biechler testified that *Bethea* said to him, *"You beat us in Court, we'll beat you in the street and burn your house down."* Upon hearing this threat, Biechler fainted and was later taken to a hospital for treatment. When informed of what had taken place, a petition for contempt of Court was filed by the District Attorney of Lancaster County and a hearing was scheduled *before the Court en banc on April 10, 1969.*

At the contempt hearing, appellant *Bethea* was represented by counsel and was given the opportunity and the right to cross-examine the Commonwealth's witnesses and to present several witnesses of his own. The only Commonwealth witness who testified as to what Bethea said was the juror, Biechler.\* Defendant testified that he did not speak to Biechler at all. The Court en banc believed Biechler's testimony and found Bethea

---

\* He testified that the alleged threat was not said in a very loud voice and that he did not know whether or not anyone else had heard it.

guilty of contempt of Court, and sentenced him to *one year* in the Lancaster County Prison. From this judgment of sentence, Bethea took this appeal.

These above-mentioned threatening statements effectively interfered with the business of the Court, realistically obstructed and undermined our Judicial system, degraded our Courts, and jeopardized Justice. Cf. *Mack Appeal,* 386 Pa. 251, 126 A. 2d 679; *Savin, Petitioner,* 131 U.S. 267; see also *Nye v. United States,* 313 U.S. 33.

Appellants contend that the above-mentioned facts, threats and contemptuous conduct (1) do not establish criminal contempt of Court beyond a reasonable doubt, and (2) if punishable at all, were *serious* offenses which entitled them to all the requirements of due process, including a jury trial.

The first contention is clearly devoid of any merit.

### Jury Trial for William Boyer and Benjamin Franklin Bethea

The Majority hold that William Boyer and Benjamin Franklin Bethea were each entitled to a jury trial because their crimes were serious. They base their decision on *Baldwin v. New York,* 399 U.S., supra. I disagree.

At the time of the threatening and contemptuous actions of William Boyer and Bethea in January 1969, and at the time of their trials and sentences in April 1969, the Supreme Court of the United States had not drawn a clear, definite and exact line between "petty" and "serious" contempts of Court. In *Cheff v. Schnackenberg,* 384 U.S. 373 (where defendant disobeyed an Order of the Federal Trade Commission), the Court held that *a sentence of six months* for this contemptuous action *was a petty offense and did not require a trial by jury.*

In *Duncan v. Louisiana,* 391 U.S. 145 (where a defendant had been indicted for assault and battery), the Supreme Court held that the right to trial by jury guaranteed by the Sixth Amendment applies to the States by virtue of the Fourteenth Amendment and further held that a two-year sentence required a jury trial.

In *Bloom v. Illinois,* 391 U.S. 194—a companion case to *Duncan v. Louisiana,* supra—the Court decided that *the right to a jury trial granted in Duncan extended to persons accused of criminal contempt of Court.* Bloom was convicted in an Illinois State Court for wilfully petitioning to admit to probate a will falsely prepared and executed after the death of the putative testator and received a sentence of *24 months* in jail. The Court noted that where no maximum sentence was statutorily provided, the Court would look to the sentence actually imposed, and if it exceeded six months' imprisonment the crime would be considered serious.

In *DeStefano v. Woods,* 392 U.S. 631 (1968), the Supreme Court held that the decisions in *Duncan v. Louisiana* and *Bloom v. Illinois* should receive *only prospective application,* i.e., "where trials began prior to May 20, 1968, the date of this Court's decisions in Duncan v. Louisiana and Bloom v. Illinois." The Court said (page 633) : "Both Duncan and Bloom left open the question whether a contempt *punished by imprisonment for one year* is, by virtue of that sentence, a sufficiently serious matter to require that a request for jury trial be honored. These two issues posed in Nos. 941 and 559 must be considered at this time only if the decisions in Duncan and Bloom apply retroactively. We hold, however, that *Duncan v. Louisiana and Bloom v. Illinois should receive only prospective application.* Accordingly, the denials of collateral relief to petitioners must be affirmed regardless of whether, for cases to which the rules announced in Duncan and Bloom apply,

the Fourteenth Amendment . . . affords a right to jury trial for criminal contempts punished by imprisonment for one year."

The *precise line* between petty and serious offenses was finally drawn and established by the Supreme Court in *Baldwin v. New York,* 399 U.S., supra (June 22, 1970). That case held that *where the authorized maximum potential sentence exceeded six months' imprisonment, the crime was serious* and the defendant had to be afforded the right to a trial by jury. However, the Court expressed no opinion as to the retroactivity of *Baldwin,* which was handed down *after the sentences in the present appeals.*

Pennsylvania has no statutorily established maximum sentence for *direct criminal contempt.* Therefore, *the actual sentences* imposed in these direct criminal contempt cases—imprisonment for one year for *the two separate direct criminal contempts* by *William* Boyer, and one year for *Bethea*—supply *the only test of the "seriousness" of the crimes.*

We are confronted with the important issue of retroactivity and, even more important, the basic power of a Court to adequately protect itself, and its power to administer Justice free from belligerent threats and unruly Court disruptions.

Is *Baldwin* retroactive? I believe it is not and certainly should not be retroactively applied to direct criminal contempts of Court.

In *Desist v. United States,* 394 U.S. 244, the Court reiterated the test or guidelines to be applied for the determination of retroactivity or nonretroactivity. These guidelines for a Judicial evaluation and determination are set forth at page 249, where the Court, quoting from *Stovall v. Denno,* 388 U.S. 293, said: " '. . . (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) *the effect on the administration*

*of justice of a retroactive application of the new standards.'* " Accord: *Johnson v. New Jersey,* 384 U.S. 719; *Tehan v. Shott,* 382 U.S. 406; *Linkletter v. Walker,* 381 U.S. 618; *Commonwealth v. Richbourg,* 442 Pa. 147, 275 A. 2d 345; *Commonwealth v. Godfrey,* 434 Pa. 532, 254 A. 2d 923. In light of these tests and standards, I strongly believe that the decision in *Baldwin v. New York,* 399 U.S., supra, should and must be given *prospective* application only.

### Additional Reasons

Furthermore, and in addition to the reasons for my conclusions which are hereinabove set forth at length, the Court in the recent cases of *Illinois v. Allen,* 397 U.S. 337, and *Mayberry v. Pennsylvania,* 400 U.S. 455, impliedly support and strengthen my Opinion. In those cases, the Supreme Court emphasized the vital importance of the third branch of our wonderful Government, and indeed the realistic necessity of preserving our Courts from contemptuous acts and actions and from any disruption of their Judicial proceedings.

In *Illinois v. Allen,* where defendant was convicted of armed robbery, the defendant had contumaciously and by threats, abusive language and disorderly conduct disrupted the Court proceedings. The Supreme Court sustained the right and power of the trial Judge to gag him and remove him from the Courtroom, in spite of the clear right given him by the Constitution's Confrontation Clause of the Sixth Amendment. The Supreme Court of the United States proclaimed (1) that *our Courts are "a citadel of Justice for all persons" in the United States,* and (2) "[O]ur courts, palladiums of liberty as they are, cannot be treated disrespectfully with impunity. . . . It would degrade our country and judicial system to permit our courts to be bullied, insulted, and humiliated and their orderly pro-

gress thwarted and obstructed by defendants brought before them charged with crimes." Is this clarion declaration of majestic palladia of Liberty and their protection and preservation against insults and disorderly disruptions to be *realistically* meaningless?

The Court further pertinently said (pages 338, 340, 341, 343-344):

"The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . .' . . . One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial. Lewis v. United States, 146 U.S. 370 (1892). The question presented in this case is whether an accused can claim the benefit of this constitutional right to remain in the courtroom while at the same time he engages in speech and conduct which is so noisy, disorderly, and disruptive that it is exceedingly difficult or wholly impossible to carry on the trial.

". . .

". . . The petitioner was removed from the courtroom [and] the voir dire examination was then continued and *the jury was selected in the absence of the petitioner. . . .'*

"After this second removal, *Allen remained out of the courtroom during the presentation of the State's case-in-chief. . . .*

". . .

"It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. *The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated.* We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants

must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think *there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.*"

In the recent case of *Mayberry v. Pennsylvania,* 400 U.S., supra, which was decided January 20, 1971, the Court, speaking through Justice Douglas, pertinently said (pages 455, 456, 462-463, 463-464, 467, 469):

"Petitioner and two codefendants were tried in a state court for prison breach and holding hostages in a penal institution. . . . The trial ended with a jury verdict of guilty of both charges on the 21st day, which was a Friday. The defendants were brought in for sentencing on the following Monday. Before imposing sentence on the verdicts the judge pronounced them guilty of [direct] criminal contempt. He found that petitioner had committed one or more contempts on 11 of the 21 days of trial and *sentenced him to not less than one nor more than two years for each of the 11 contempts or a total of 11 to 22 years.*

". . .

"Petitioner's conduct at the trial comes as a shock to those raised in the western tradition that considers a courtroom a hallowed place of quiet dignity as far removed as possible from the emotions of the street.

". . .

"These brazen efforts to denounce, insult, and slander the court and to paralyze the trial are at war with the concept of justice under law. . . . We have here downright insults of a trial judge, and tactics taken from street brawls and transported to the courtroom. This is conduct not 'befitting an American courtroom,'

as we said in Illinois v. Allen, 397 U.S. 337, 346; and criminal contempt is one appropriate remedy. Id., at 344-345.

"As these separate acts or outbursts took place, the arsenal of authority described in Allen was available to the trial judge to keep order in the courtroom. *He could, with propriety, have instantly acted, holding petitioner in contempt,* or excluding him from the courtroom, or otherwise insulating his vulgarity from the courtroom.*

". . .

"Mr. Chief Justice BURGER, concurring.

". . .

"As the Court's opinion suggests, the standards of Illinois v. Allen, supra, would have enabled the trial judge to remove the accused from the courtroom after his first outrageous actions and words, *and to summarily punish him for contempt.*

". . .

"Mr. Justice HARLAN, concurring.

"I concur in the judgment of reversal *solely* on the ground that these contempt convictions must be regarded as infected by the fact that the *unprecedented long sentence of 22 years* which they carried was imposed by a judge who himself had been the victim of petitioner's shockingly abusive conduct. That circumstance seems to me to deprive the contempt proceeding of the appearance of evenhanded justice which is at the core of due process. For this reason I think the contempt convictions must be set aside, leaving the State free to try the contempt specifications before an-

---

* The Court further said: "A judge cannot be driven out of a case. Where, however, he does not act the instant the contempt is committed, but waits until the end of the trial, on balance, it is generally wise where the marks of the unseemly conduct have left personal stings to ask a fellow judge to take his place. . . . Vacated and remanded."

other judge or to proceed otherwise against this petitioner.

"...

"Mr. Justice BLACK concurs in the judgment and with all the opinion *except that part which indicates that the judge without a jury could have convicted Mayberry of contempt instantaneously with the outburst."*

It cannot escape anyone's notice that in *Mayberry,* 400 U.S., supra, no mention was made, and in *Illinois v. Allen* no mention was made, except by Justice BLACK, of the right of a defendant who commits one or more outrageous attacks on a Judge in the Courtroom *to a jury trial.* On the contrary, the Supreme Court granted a trial Judge or trial Court the right and power to instantly and summarily find a defendant guilty of contempt of Court and impose a prison sentence on the contemptuous defendant.

It is clearly obvious that the preservation and protection of our Courts and all proceedings before these Citadels of Justice, and particularly their right and power to administer Justice quickly and with order, dignity and decorum, free from disruption, disorderly or contemptuous conduct, is of greater importance than the Confrontation or Jury Trial provisions which protect the rights of a person on trial for a criminal offense.

I hope this means that the Court has abandoned or changed—and, if not, I respectfully and strongly urge it to do so—its two prior decisions which grant a jury trial to a defendant who is sentenced for more than six months for degrading or vilifying a Judge in the Courtroom. This grant of a jury trial in such situations degrades and makes a mockery of our Courts and our Judicial system and is very unwise. It is even more unwise for the following reason, which has not been considered, or at least has never been mentioned by any Supreme Court, namely, if there is a jury trial, the

defendant can call the trial Judge as a witness and cross-examine him to his heart's content and thus subject him to ridicule and contempt. What a misfortune for our Judges and their esteem in the eyes and minds of the Public! This is totally unnecessary and unwise, because a trial Judge's Order and sentence for contempt of Court is subject to review by an Appellate Court for an abuse of discretion, or an error of law, or a violation of the Constitution.

In the light of these decisions, and particularly in the face of all *the factors and the reasons* hereinabove set forth, I do not see how it is possible for any Court —and I say this with due deference—to require a jury trial for a person who has committed a direct criminal contempt of Court in the presence of the Court and has been sentenced to a year for each contempt, when they have wisely permitted, whenever appropriate, a Court to have a disruptive defendant bound and gagged and removed from the Courtroom in direct conflict with the Sixth Amendment to the Constitution. If that is both wise and necessary—and it certainly is!—it is equally wise and necessary to permit a Judge before whom a *direct* criminal contempt has occurred to impose a reasonable sentence upon the disorderly or disruptive or contemptuous person who has made a mockery of our citadels of Justice and our Judicial System. The contempt sentence will, I repeat, always be subject to review for an abuse of discretion or an error of law or a violation of the Constitution.

When two provisions of the Constitution are conflicting or overlapping, or even when a Constitutional provision appears to be mandatory, Courts must decide from a totality of the circumstances (1) which provision of the Constitution shall prevail in each particular case, and (2) whether the challenged Constitutional provision is absolute and allows no exception, and (3)

exactly how each provision shall be applied, and (4) when and why each should be retroactive.

In my opinion, the sentences imposed upon *William Boyer* and *Bethea* for direct criminal contempt of Court were proper and appropriate and did not violate any law or due process or any Constitutional right.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the opinion and the result reached by the majority. However, I wish to make additional comment on the judicial use of the contempt power.

The American Bar Association Project on Standards for Criminal Justice has published An Advance Report of Part of Standards Relating to the Function of the Trial Judge entitled "The Judge's Role in Dealing with Trial Disruptions" (Final Tentative Draft, July 1971). These standards provide a sound guide for judicial conduct in this area.[1]

Section F.1 recognizes the inherent power of a court ". . . to punish any contempt (in order to protect the rights of the defendant and the interest of the public by assuring that the administration of criminal justice shall not be thwarted)."[2] This is in accord with recent

---

[1] Other professional organizations have also taken steps to articulate standards in this area. See Trial 28-33 (January-February 1971) where a representative of the American Trial Lawyers Association comments on recently published principles of the American College of Trial Lawyers.

2. As was so well stated in a recent English case: ". . . The archaic description of these proceedings as 'contempt of court' is in my view unfortunate and misleading. It suggests that they are designed to buttress the dignity of the judges and to protect them from insult. Nothing could be further from the truth. No such protection is needed. The sole purpose of proceedings for contempt is to give our courts the power effectively to protect the rights of the public by ensuring that the administration of justice shall not be obstructed or prevented. . . ." *Morris v. Masters of the Crown Office*, [1970] 2 W.L.R. 792, 801 (C.A.).

declarations of the United States Supreme Court reaffirming long standing principles of contempt. See *Illinois v. Allen*, 397 U.S. 337, 344-45, 90 S. Ct. 1057, 1061-62 (1970) (where the contempt power expounded in *Ex parte Terry*, 128 U.S. 289, 9 S. Ct. 77 (1888) was approved as one appropriate remedy for the unruly defendant). Accord, *Cooke v. United States*, 267 U.S. 517, 45 S. Ct. 390 (1925).

This power is not untrammeled. The ABA Standards contain meritorious provisions concerning admonition and warning, notice of intent to use contempt power, opportunity to be heard, and referral to another judge under certain circumstances. It is not my purpose though to set forth the Standards at length, for they are publicly available and self-explanatory.

In this area of judicial endeavor it is wise to recall the words of Chief Justice TAFT in *Cooke v. United States,* supra: "The power of contempt which a judge must have and exercise in protecting the due and orderly administration of justice, and in maintaining the authority and dignity of the court, is most important and indispensable. But its exercise is a delicate one, and care is needed to avoid arbitrary and oppressive conclusions." Id. at 539, 45 S. Ct. at 390. As that Court stated in its most recent declaration concerning the contempt power and the unruly defendant, ". . . justice must satisfy the appearance of justice." *Mayberry v. Pennsylvania*, 400 U.S. 455, 465, 91 S. Ct. 499, 505 (1971) (quoting from *Offutt v. United States,* 348 U.S. 11, 14, 75 S. Ct. 11, 13 (1954)). See generally, Note, 46 N.Y.U. L. Rev. 120 (1971).

---

The purposes of a contempt proceeding were equally well stated recently by a noted American legal scholar. "Punishment for contempt is effective only if the threat of it serves as a deterrent to obstructive conduct. The power is used not for retribution but for prevention." Freund, "Contempt Power: Prevention, Not Retribution." Trial 14 (January-February 1971).

Concurring and Dissenting Opinion by Mr. Justice Pomeroy:

The majority opinion relative to the appeals at Nos. 384 and 390, *sub silentio,* gives retroactive application to the decision of *Baldwin v. New York,* 399 U.S. 66, 26 L. Ed. 2d 437 (1970), in which the United States Supreme Court held that a right to jury trial must be provided where the defendant is charged with an offense for which the punishment prescribed may be imprisonment for a period in excess of six months. This result is reached by reading the *Baldwin* six months rule into the requirement of a right to jury trial for serious criminal contempts as previously announced in *Bloom v. Illinois,* 391 U.S. 194, 20 L. Ed. 2d 552 (1968).

The frequently quoted *Stovall v. Denno,* 388 U.S. 293, 297, 18 L. Ed. 2d 1199 (1967) standards for determining retroactivity are: "(a) the purpose to be served by the new standards, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." The foremost of these considerations is the purpose to be served by the new rule. *Desist v. United States,* 394 U.S. 244, 22 L. Ed. 2d 248 (1969). As I view the *Baldwin* ruling, it is not an effort to overcome a flaw in the truth determining process, nor an effort to cure past prejudice, but is rather a practical standard by which to implement the basic constitutional right to a trial by jury in contempt of court situations. Just as the serious offense standards announced in *Duncan v. Louisiana,* 391 U.S. 145, 20 L. Ed. 2d 491 (1968) and *Bloom v. Illinois, supra,* were given a purely prospective application by the United States Supreme Court, *DeStefano v. Woods,* 392 U.S. 631, 20 L. Ed. 2d 1308 (1968), I conclude the six months standard announced in *Baldwin* should likewise be accorded a purely prospective application. For this reason, I dissent in Nos. 384 and 390. See *People*

*v. Dargan,* 27 N.Y. 2d 100, 313 N.Y.S. 712, 261 N.E. 2d 633 (1970); *U. S. ex rel. Buonoraba v. Commissioner of Corrections,* 316 F. Supp. 556 (S.D. N.Y. 1970); but see *U. S. ex rel. Butler v. Thomas,* 319 F. Supp. 524 (S.D. N.Y. 1970).

As to No. 391, wherein Robert Victor Boyer is the defendant, I concur in the opinion of the Court.