**Commonwealth v. Holliday**

C. *Gregory Frantz,* Assistant District Attorney, for Commonwealth.

*James B. Yelovich,* of *Kimmel & Rascona,* for defendant.

COFFROTH, *P. J.,* June 10, 1975 — The question in this case is whether the Commonwealth may appeal to the Court of Common Pleas defendant's accquittal by a justice of the peace of the summary offense of killing a deer in excess of the season limit in violation of section 502 of the Game Law of June 3, 1937, P.L. 1225, art. 5, as amended, 34 P.S. §1311.502, which, for a first offense, imposes a fine and denial of the right to hunt for a prescribed period, and imprisonment for a second or subsequent offense: 34 P.S. §1311.731.

At the hearing, we took under advisement defendant's motion to quash the appeal, alleging that:

"The Commonwealth has no right to appeal from a summary acquittal, particularly where the magistrate's decision of acquittal is based upon reasonable doubt arising from the factual evidence or lack of it."

We heard the case de novo on its merits, subject to ruling upon the motion to quash. The transcript of the justice of the peace states:

"Upon consideration of the testimony and the Game Law, I found that the Commonwealth failed to establish the guilt of the defendant beyond a reasonable doubt and therefore found him not guilty. . ."

From this, and from the evidence which we heard provisionally, it is clear that defendant's acquittal was "bottomed on factual conclusions. . . made on the basis of evidence at the trial." United States v. Sisson, 399 U.S. 267, 90 S. Ct. 2117, 26 L.Ed.2d 608, 623 (1970). We grant the motion to quash, and do not reach the merits of the case which were decided by the justice of the peace.

There is no-controlling appellate decision upon the right of the Commonwealth to appeal to the Common Pleas Court a summary acquittal by a magistrate, justice of the peace or other subordinate court, and the decisions of the Common Pleas Courts on the subject are divided. An appeal in such case was upheld in Commonwealth v. Lakelands, no. 3232-A-1973, Erie Co. (Anthony, J.), and in Commonwealth ex rel. Pennsylvania Game Commission v. Hughes, no. 74-54-CRA, Clearfield Co. (Reilly, P.J.). See also Shaler v. Union Real Estate Co., 120 Pitts. L. J. 105 (1971) (Martin, J.), allowing the prosecutor to appeal a civil proceeding for penalty brought under a township ordinance. Such right of appeal was denied in Commonwealth v. Morningstar, February sessions 1975, no. 29 (Huntingdon Co., Terrizzi, P. J.), a game law violation.

The courts allowing the right of appeal based their decisions on Pennsylvania Constitution, article V, sec. 9. In Morningstar, supra, Judge Terrizzi denies the right of appeal on the basis of a different construction of article V, sec. 9, and as a violation

of the constitutional prohibition against double jeopardy. In substance, we agree with the latter analysis.

Article V, sec. 9, of the Constitution of Pennsylvania was adopted in 1968 and provides as follows:

"There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law."

The courts allowing a Commonwealth appeal from summary acquittals construe the words: "There shall be a right of appeal in all cases to a court of record from a court not of record" as mandating a right of appeal in all parties including the Commonwealth, since the language does not restrict the right of appeal to defendant. We consider that conclusion unjustified, and take the view that the Commonwealth is not permitted an appeal in the absence of language expressly, or by clear implication, providing for it, for the following reasons:

(1) Section 14 of Article V of the Constitution of 1874, which section 9 under consideration supplants, expressly provided that in all summary cases "either party may appeal."[1] Omission of that language from the present section 9, without stat-

---

1. The Constitution of 1874, Art. V, sec. 14 provided: "In all cases of summary conviction in this Commonwealth, or of judgment in suit for a penalty before a magistrate, or court not of record, either party may appeal to such court of record as may be prescribed by law, upon allowance of the appellate court or judge thereof upon cause shown."

ing which party or parties may exercise the right of appeal granted, is a significant deletion. It at least indicates an intention to make no declaration on the subject; moreover, it may be fairly said to manifest an intention to eliminate constitutional sanction for such a Commonwealth right of appeal. It seems plain, as the court correctly observed in Morningstar, supra:

"Had it been intended that this right be preserved there would have been no reason to change the wording of the section."

(2) In the debates on section 9 at the Constitutional Convention of 1968, there is no mention of any Commonwealth right of appeal; the delegates were wholly engrossed with assuring a right of appeal to the "people," the "individual," the "litigant," without any requirement of special allowance as contained in the Constitution of 1874. See Debates of the Pennsylvania Constitutional Convention of 1967-68, Vol. II, pages 870-73, 957-67, and 1000-01.

(3) Construing the language, "There shall be a right of appeal in all cases to a court of record from a court not of record," as giving the Commonwealth a right of appeal also logically requires that the language, "there shall also be a right of appeal from a court of record. . . to an appellate court" be construed as giving the Commonwealth the right to appeal every criminal acquittal. As said in Morningstar, supra, of the decisions allowing the Commonwealth to appeal a summary acquittal:

"If there is merit in this conclusion, then it would seem that it would also be correct that the Commonwealth should have a right of appeal from a court of record to an appellate court."

It is inconceivable to us that the constitutional

convention did not perceive this logic, or meant to abrogate the general principle, so firmly fixed in our history and jurisprudence, of which they were well aware that a verdict of acquittal in felony and misdemeanor cases is final. Paraphrasing Mr. Justice Gray in United States v. Sanges, 144 U. S. 310, 12 S.Ct. 609, 36 L.Ed. 445, 450 (1891). "It is impossible to presume an intention on the part of [the Convention] to make so serious and far-reaching an innovation in the criminal jurisprudence of the [Commonwealth]."[2]

(4) The legislature in enacting the Minor Judiciary Court Appeals Act of December 2, 1968, P.L. 1137 (No. 355), 42 P.S. §3001 et seq., following adoption of article V, sec. 9, provided only for appeal by defendant in summary proceedings, repealed the Act of April 17, 1876, P.L. 29, 19 P.S. §1189, which allowed appeal by "either party," and also repealed section 1210 of the Game Law of June 3, 1932, P.L. 1225, as amended, 34 P.S. §1311.1210, which allowed appeal by the prosecutor

2. According to the historical note to article V, sec. 9, of the Pennsylvania Constitution in Purdon's, the Pennsylvania Constitutions of 1790 and 1838 expressly granted the Commonwealth the right of appellate review in criminal cases. The Constitution of 1874, in article V, sec. 24, grants only to the accused the right of appeal after conviction and sentence. Since then, the right of the Commonwealth to appeal in a criminal felony or misdemeanor cases is strictly limited and is not allowed after acquittal. See Commonwealth v. Simpson, 310 Pa. 380, 165 Atl. 498 (1933). See also Commonwealth v. Jones, 453 Pa. 8, 306 A.2d 900 (1973); Commonwealth v. Ray, 448 Pa. 307, 292 A.2d 410 (1972); Commonwealth v. Rios, 447 Pa. 397, 289 A.2d 721 (1972); Commonwealth v. Haines, 410 Pa. 601, 190 A.2d 118 (1963); Commonwealth v. Melton, 406 Pa. 343, 178 A.2d 728 (1962) and 402 Pa. 628 (1961); Commonwealth v. Hartment, 383 Pa. 461, 119 A.2d 745 (1956). Compare 19 P.S. §1188.

from a summary acquittal. Supreme Court Rule of Criminal Procedure 67, governing appeals from summary judgments, supersedes the Minor Judiciary Court Appeals Act, supra, and also makes provision only for appeals by defendant from summary conviction. These post-convention enactments manifest that neither the legislature nor the Supreme Court Rules Committee views article V, sec. 9, as giving the Commonwealth any right to appeal a summary acquittal.

(5) On principle, there is no reason for differentiating between a summary proceeding for which the appeal is de novo, and a proceeding in a court of record where the appeal reviews only the record, as respects the essential justice or injustice of depriving an accused of his acquittal in a court of competent jurisdiction and forcing him to go through retrial.

These considerations lead us to conclude that article V, sec. 9, of the Pennsylvania Constitution grants no right of appeal to the Commonwealth from an acquittal in a criminal case, whether felony, misdemeanor or summary offense obtained in a court of competent jurisdiction, whether of record or not of record. Our present Constitution is, at least, neutral on that issue, leaving resolution to be found elsewhere.

*Double Jeopardy:* [3]

The Fifth Amendment to the United States Constitution says, in relevant part:

". . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb. . . ."

Article I, sec. 10, of the Pennsylvania Constitution states, in part:

---

3. Sometimes called "former jeopardy": Commonwealth v. Baker, 413 Pa. 105, 108 footnote, 196 A.2d 382 (1964).

"No person shall, for the same offense, be twice put in jeopardy of life or limb. . . ."

The differences in the language of these provisions are stylistic only (Commonwealth v. Campana, 452 Pa. 233, 243, 304 A.2d 432 (1973)), but have produced over the years great differences in substantive meaning centering primarily on the meaning of "life or limb." The United States Supreme Court early interpreted this phrase broadly to include all crimes, large and small, but the Pennsylvania courts have narrowly confined its meaning to capital crimes only, those for which the death penalty may be imposed. Commonwealth v. Simpson, 310 Pa. 380, 386, 388, 165 Atl. 498 (1933). Pennsylvania's interpretation has been reaffirmed as recently as Commonwealth v. Warfield, 424 Pa. 555, 227 A.2d 177 (1967) although it has more recently been suggested that Pennsylvania's double jeopardy clause is now subject to reinterpretation. Commonwealth v. Campana, supra, 243, footnote 14. Other States have generally followed the Federal lead, leaving Pennsylvania as the only State adhering to the capital offense limitation. See 22 C.J.S. Criminal Law §390b; Commonwealth v. Campana, supra, 243, footnote 14, and 261 footnote 1. The Federal courts have reached their result by interpreting the clause as embracing the common law prohibition upon being tried twice for any crime and the common law pleas of former conviction (autrefois convict) and former acquittal (autrefois acquit). See U. S. v. Sanges, supra; Ex Parte Lange, 85 U.S. 163 (18 Wallace), 21 L.Ed. 872 (1874). These common law pleas are part of Pennsylvania's statutory law, but Pennsylvania does not give them constitutional stature. See Commonwealth

ex rel. Papy v. Maroney, 417 Pa. 368, 207 A.2d 814 (1965); Act of March 31, 1860, P.L. 427, secs. 30 and 51, 19 P.S. §§464 and 831; Crimes Code Act of December 6, 1972, P.L. 1068 (No. 334), sec. 1, 18 Pa. C.S.A. §109. The pleas of former conviction and former acquittal are not identical to double jeopardy; Summary of Pennsylvania Jurisprudence, Criminal Law §432, but they have the same practical effect in subsequent prosecutions as a plea of double jeopardy: Commonwealth ex rel. Papy v. Maroney, supra, at 370; Commonwealth v. Campana, supra, at 243-4.

Double jeopardy and the pleas of autrefois convict and acquit are most commonly conceived as bars to a second prosecution for the same offense for which defendant was previously tried and convicted or acquitted.[4] Their application is somewhat less clear in the distinct problem of appeal by the government to set aside an acquittal obtained below. In its early history, Pennsylvania was receptive to the idea of appeals by the State. See discussion of Article 5, §9, particularly footnote 1, supra. But it has become settled since the 1874 Constitution that the Commonwealth may not appeal an acquittal of a felony or misdemeanor. The

---

4. In Commonwealth v. Campana, supra, a majority of the Pennsylvania Supreme Court attempted to expand the Federal double jeopardy clause to apply not only to identical offense cases, but also to multiple related offenses arising from the same episode of conduct and involving the same or essentially the same conduct. See Commonwealth v. Robinette, 28 Somerset 149, 152, 154 (1973). But after the U.S. Supreme Court granted certiorari, the Pennsylvania court backed off and then grounded its decision on its supervisory powers. Commonwealth v. Campana, 455 Pa. 622, 314 A.2d 854 (1974).

rationale for the rule is seldom stated; quite obviously, it is not grounded upon double jeopardy which in Pennsylvania was applied only to capital cases. Although Pennsylvania settled upon the rule more recently than others, it is an "ancient rule": Summary of Pennsylvania Jurisprudence, Criminal Law Section 520, pp. 401-02, an "ancient limitation": Id., section 521. It is derived from the common law: Commonwealth v. Delicese, 155 Pa. Superior Ct. 120, 122, 38 A.2d 494 (1944); see also U.S. v. Sanges, supra, and Ex Parte Lange, supra. As such, however, the rule was generally thought not to have constitutional status and therefore to be alterable by statute. See U.S. v. Sanges, supra, at 446. In Pennsylvania, the Act of May 19, 1874, P.L. 219, 19 P.S. §1188, allows the State a general appeal in cases charging the offenses of nuisance, forcible entry and detainer, and forcible detainer. See 78 Dickinson Law Review 288-9, footnote 702. Commonwealth appeals in summary cases were viewed more tolerantly, however, as previously discussed in this opinion. See also Commonwealth v. Petra, 28 D. & C. 236 (1937); Commonwealth v. Jolly, 15 Dist. 305 (1906); Commonwealth ex rel. Fisher v. Stevens, 32 Northamp. 298 (1951); compare Appeals From Justices of the Peace, 30 Dist. 200 (1920), and Commonwealth v. Hudson, 17 Dist. 1013 (1908). See generally The Right of the Commonwealth to Appeal in Criminal Cases, 1 Villanova Law Review 36; 10A P.L. E., Criminal Law §892.

But a different situation has long prevailed on the Federal level. In Ball v. U.S., 163 U.S. 662, 41 L.Ed. 300, 303 (1896), this dictum appears:

"As to the defendant who had been acquitted by the verdict duly returned and received the court

could take no action other than to order his discharge. The verdict of acquittal was final, and could not be reviewed, on error or otherwise, without putting him twice in jeopardy, and thereby violating the Constitution."

In Kepner v. U.S., 195 U.S. 100, 24 S. Ct. 797, 49 L.Ed. 114 (1904), the court relied upon Ball's dictum and held that the prohibition against double jeopardy prevents an appeal by the government from an acquittal. Accord, U.S. v. Sisson, supra, at 624. In Kepner, supra, at 126, Justice Holmes, joined by two other justices, dissented saying that "logically and rationally a man cannot be said to be more than once in jeopardy in the same cause, however often he may be tried. The jeopardy is one continuing jeopardy, from its beginning to the end of the cause."[5] But Justice Holmes' view has never taken hold. Compare Commonwealth ex rel. Farrow v. Martin, 387 Pa. 449, 451, 127 A.2d 660 (1956).

Most of the States have generally followed the Federal view of double jeopardy and have held unconstitutional statutes allowing the government to appeal after acquittal. See Annotations, 113 A.L.R. 636 and 157 A.L.R. 1065.

These two opposed views of double jeopardy, Pennsylvania and Federal, co-existed independently so long as the Fifth Amendment was inapplicable to the States as held in Palko v. Connecticut, 302 U.S. 319, 82 L.Ed. 288 (1937). But in 1969 Palko was overruled in Benton v. Maryland, 395 U.S. 784, 794, 23 L.Ed.2d 707, which held that "the double jeopardy prohibition of the Fifth Amendment

---

5. The exceptions allowed in P.S. §1188 are probably now repealed by Benton. See 78 Dickinson Law Review 288-9, note 702.

represents a fundamental ideal in our Constitutional heritage, and that it should apply to the states through the Fourteenth Amendment." Therefore, double jeopardy in Pennsylvania now has a whole new look and must be viewed consistent with Federal standards. See Commonwealth v. Richbourg, 442 Pa. 147, 275 A.2d 345 (1971), and Commonwealth v. Campana, 452 Pa. 233, 239 footnote 2, 304 A.2d 432 (1973).

It will surely be conceded on all hands that there may be no appeal in Pennsylvania from an acquittal on the merits of a felony or misdemeanor, and that this is true not only under Federal double jeopardy standards, but also under pre-Benton Pennsylvania case and statutory law. See Commonwealth v. Simpson, supra; Act of May 19, 1874, P.L. 219, 19 P.S. §1188.[6] The question remains whether Federal double jeopardy standards prohibit appeals de novo from acquittals in summary cases. We hold they do.[7]

---

6. Under long established Pennsylvania law, the Commonwealth may not appeal an acquittal in the Common Pleas reversing defendant's summary conviction before a justice of the peace, magistrate or similar subordinate court. Commonwealth v. Ray, 448 Pa. 307 292 A.2d 410 (1972); Commonwealth v. Haines, 410 Pa. 601 190 A.2d 118 863); Commonwealth v. Petersheim, 166 Pa. Superior Ct. 90 70 A.2d 395 (1950) (appeal from this Court); Commonwealth v. Wanamaker, 128 Pa. Superior Ct. 528, 194 Atl. 681 (1937). The same is true where the case is one for collection of a penalty under a municipal ordinance. Scranton v. Noll, 108 Pa. Superior Ct. 94, 164 Atl. 850 (1933); Commonwealth v. Ahlgrim, 98 Pa. Superior Ct. 595 (1930).

7. See also Commonwalth v. Clay, 230 Pa. Superior Ct. 157, 326 A.2d 513 (1975); Commonwealth v. Moore, 226 Pa. Superior Ct. 58, 312 A.2d 422 (1973); Commonwealth v. Mirra, 220 Pa. Superior Ct. 393, 281 A.2d 773 (1971); Commonwealth v. Harper, 219 Pa. Superior Ct. 100, 280 A.2d 637 (1971).

The purpose and spirit of the double jeopardy clause are its protection of the citizen against not only double punishment, but against being "twice put in jeopardy." That language of the Constitution relates to a potential, i.e., the risk that an accused will be convicted of the same offense for which he was initially tried. See Price v. Georgia, 398 U.S. 323, 26 L.Ed.2d 300, 303 (1970). That case expressly rejected the doctrine of continuing jeopardy and held that jeopardy ends with an acquittal, citing Kepner v. U.S., supra, and Green v. U.S., 355 U.S. 184, 2 L.Ed.2d 199 (1957). No reason appears why that rationale should not have equal force when one is acquitted of a summary offense and the State attempts to subject him to a second conviction hazard de novo in the Common Pleas, as it does when one is initially convicted in the Common Pleas and the State attempts to subject him to a second conviction hazard. The potentials for harassment, anxiety and insecurity for the accused, and for the imposition of penal sanctions, are still present. See Green v. U.S., supra, 204; Breed v. Jones, 421 U.S. 519 (1975) (Juvenile proceedings); Commonwealth v. Mills, 447 Pa. 163, 169, 286 A.2d 638 (1971). It is *retrial* after acquittal, carrying with it the hazard of conviction, which in the absence of waiver or manifest necessity constitutes the double jeopardy. See Commonwealth v. Mills, supra, 169-70.

The fact that the penalty for a summary offense is less serious than that for a felony or misdemeanor warrants no different treatment. When the Commonwealth is allowed to appeal an acquittal, there is violation of the "principle that no man shall more than once be placed in peril of legal penalties upon the same accusation." Ex Parte Lange, supra, 878.

Among the States whose double jeopardy doctrine follows or more nearly approaches that of the Federal view, most have held unconstitutional statutes providing for appeal by the State from a summary acquittal as violating the protection against double jeopardy. See People v. Garcia, 7 P.2d 401 (Cal. 1931); People v. Miner, 33 N.E. 40 (Ill. 1893); and Portland v. Erickson, 62 Pac. 753 (Ore. 1900); those cases are cited and summarized in 113 A.L.R. 638-9. Some of those cases stress that the offense must entail imprisonment as punishment and that there is no jeopardy if only a fine can be imposed. See 113 A.L.R. 643 and 157 A.L.R. 1068. In Commonwealth v. Perrow, 97 S.E. 820 (Va. 1919), however, it was held that double jeopardy applies even though only a fine may be imposed.

Under Federal double jeopardy standards, it is generally regarded as sufficient to invoke them if the case is a criminal one, however minor. Double jeopardy is applicable in every "criminal court, or at least a court empowered to impose punishment by way of fine, imprisonment, or otherwise, as a deterrent to the commission of crime. . . ." 22 C.J.S., Criminal Law §240, 626. The same authority states:

"Although in strictness the constitutional provisions apply only to felonies, the courts generally have been guided by the spirit rather than the letter of the law and have applied the doctrine to all classes of criminal prosecutions regardless of the nature of the punishment . . . regardless of the kind or the magnitude of the offense. . . ."

In 76 Dickinson Law Reivew 282, it is concluded that:

"Notwithstanding the reference to 'jeopardy to life or limb', the Federal Constitution has been in-

terpreted to apply to crimes punishable by non-corporal punishment and to apply to misdemeanors as well as felonies."

In Clawans v. Rives, 104 F.2d 240, 242, footnote 4 (C.C.A.D.C. 1939), the court says:

"The phrase 'life or limb' has not been construed strictly: it applies to any criminal penalty."

We see no justification for withdrawing from double jeopardy protection criminal prosecutions merely because they carry no punishment or imprisonment; the theory that imprisonment is related to jeopardy of "limb" is out of step with federal double jeopardy thinking.

In some areas, there may be some rational basis for distinguishing a de novo appeal or trial in a two-tier system for lesser offenses, from prosecutions for felonies and misdemeanors which are first triable in a court of general jurisdiction. See Colton v. Kentucky, 407 U.S. 104, 32 L.Ed.2d 584 (1972), declining to apply the due process requirements of North Carolina v. Pearce, 395 U.S. 711, 23 L.Ed.2d 656 (1969), to an increased sentence upon a de novo appeal in a two-tier system.[8] But the considerations found controlling in Colten are inapplicable to double jeopardy. More to the point is Robinson v. Neil, 366 F. Supp. 924, 929 (E.D. Tenn. 1973), where the court said:

---

8. "If there is no serious dispute as to the facts in a criminal case being tried by a judge, on waiver of a jury trial, and the trial judge is of opinion that legal questions are involved which should be passed upon by appellate court, he should adjudge the defendant guilty, which will permit the defendant to bring the questions before the appellate court on appeal ..." Commonwealth v. Snaman, 131 Pa. Superior Ct. 383, 386, 200 Atl. 106 (1938); accord: Commonwealth v. Teman, 134 Pa. Superior Ct. 36, 37-8, 3 A.2d 960 (1939); Commonwealth v. Pomeroy. 48 D. & C. 334, 339-40 (1943).

". . . [S]tates may not, by the device of creating courts of limited jurisdiction, avoid the constitutional mandate against placing a person twice in jeopardy for the same offense."

In Waller v. Florida, 397 U.S. 387, 25 L.Ed.2d 435 (1970, and Commonwealth v. Campana, 452 Pa. 233, 304 A.2d 432 (1973) the courts readily applied Federal double jeopardy standards to summary convictions. In Kansas v. Bott, 509 S.W.2d 42 (Mo. 1974), the court held that granting the State a de novo appeal after acquittal in a summary proceeding violates double jeopardy.

Accordingly even if Article 5, §9 of the Pennsylvania Constitution were interpreted as giving the Commonwealth the right to appeal from acquittal in a summary proceeding before a magistrate such enactment is nullified by Federal double jeopardy standards which preclude any appeal from acquittal in any criminal prosecution in any court of competent jurisdiction. The acquittal puts the accusation at rest and the accused is not required to go through the peril again.

It should be pointed out that this is a case of acquittal on the merits, based at least in part upon findings of fact. It seems now settled that the double jeopardy clause permits a governmental appeal only when it clearly involves a pure question of law which would not require a retrial before jury or judge on factual issues: U. S. v. Wilson, 420 U.S. 332 (1975); U.S. v. Jenkins, 420 U.S. 358 (1975). Compare, Commonwealth v. Ray, supra. –

In our discussion we have confined ourselves to an analysis of the authorities and have refrained from commenting upon their wisdom as public policy. But a word on that subject might be in order. This was part of the concern underlying Justice

Holmes' concept of continuing jeopardy advanced in Kepner v. U. S., supra, 126, where he said, almost prophetically:

"At the present time in this country there is more danger that criminals will escape justice than that they will be subjected to tyranny."

Consequently some modern judicial voices have stressed the importance of balancing the interests of the individual and those of society in applying the double jeopardy clause. See U. S. v. Jenkins, supra, dissenting opinion of Judge Lumbard, and Pettyjohn v. Evatt, 369 F. Supp. 865, 870 (1974); compare Commonwealth v. Jones, 453 Pa. 8, 306 A.2d 900 (1973), dissenting opinion of Manderino, J. But the Pennsylvania courts have gone far in refusing to review a not guilty judgment even where facts are stipulated. See Commonwealth v. Haines, supra; Commonwealth v. Hartman, 383 Pa. 461, 119 A.2d 211 (1956); Commonwealth v. Rios, supra. And in Commonwealth v. Mills, supra, we are told that in applying the prohibition against double jeopardy "the focus is always on the individual," and not upon the interests of government, which seemingly rejects any balancing of interests. See 74 Harv. L.R. 1.

Finally, a word of warning: nonreviewability of judicial judgment carries with it the potential for arbitrary abuse, and calls for a rigid integrity in the judicial process. See Commonwealth v. Yoder, 27 Somerset 155, 158 (1972). Otherwise we do serious harm to the fair administration of criminal justice by undermining the credibility of judicial judgment and depriving it of the public confidence essential to the court as a public institution. See Commonwealth v. Schlotthauer, 27 Somerset 376, 378, 61 D. & C. 2d 170, (1972).

532

## ORDER

Now, June 10th 1975, defendant's motion to quash the appeal is granted. Costs on the county.

*Judges Note:* See also Commonwealth v. Shaffer, 31 Somerset 395 (1976) (an acquittal by a justice of the peace is not appealable under Pa. law even though based on a pure error of law); Commonwealth v. Davis, 372 A.2d 912 (Sup. 1977), (a dismissal, as distinguised from an acquittal, based on a pure error of law is appealable by the Commonwealth); compare U.S. v. Martin Linen Supply Co., 51 LEd2d (1977).