352 A.2d 52

**COMMONWEALTH of Pennsylvania**

v.

**Arthur CRAWFORD.**

**Appeal of Paul GEIGER.**

Supreme Court of Pennsylvania.

Argued June 25, 1974.

Decided Jan. 29, 1976.

Defender Assn. of Philadelphia, Vincent J. Ziccardi, Defender, John W. Packel, Chief, Appeals Div., William Sayer, Asst. Defender, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Benjamin Levintow, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is an appeal from a six month prison sentence, summarily imposed after a finding of direct criminal contempt of court.[1] The courtroom misconduct found to be contemptuous occurred during the murder trial of Arthur Crawford. Appellant, also charged with this crime, testified for the prosecution at Crawford's first trial which resulted in a conviction.[2] Between Crawford's first and second trial, appellant was separately tried and acquitted for his alleged role in the killing.

1. See Act of June 16, 1836, P.L. 784, §§ 23 II, 24, 17 P.S. §§ 2041 II, 2042.
2. A new trial was awarded by this Court. *Commonwealth v. Crawford*, 452 Pa. 326, 305 A.2d 893 (1973).

During the second trial of Crawford, appellant was again called as a witness by the Commonwealth. Following appellant's refusal to testify, the court warned him that failure to testify would result in sanctions being imposed. Upon his continued refusal to testify, appellant was summarily held in contempt of court and sentenced to six months in prison.

Appellant advances several assignments of error. We find one to be persuasive and accordingly reverse[3] the judgment of sentence.

Appellant contends that the right to counsel is mandatory despite the summary nature of the proceedings. Appellant was not represented by counsel during the summary contempt proceeding.[4] In *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972),

---

3. We hear this appeal under authority of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(5), 17 P.S. § 211.202(5) (Supp.1975).

4. Appellant argues that he in fact had available counsel who was denied the opportunity to appear on his behalf. The record shows that appellant, having been duly subpoenaed, appeared and announced that he was leaving the courtroom to visit the men's room. He failed to return. After the issuance of a bench warrant, he was apprehended. An assistant public defender approached the attorney for the Commonwealth during the trial, but before appellant had been called as a witness, and the following occurred:

"MR. STRAUSS. (the assistant district attorney). Can we see Your Honor at sidebar? (Conference at sidebar, outside of the hearing of the jury, in the presence of the Court, Mr. Strauss, Mr. Egnal (Crawford's counsel) and Mr. William Sayer, Esquire, Assistant Public Defender, during which the following took place:)

MR. STRAUSS: Your Honor, I am in the middle of this trial and this man—I don't want this person walking up to me.

MR. SAYER: If he is calling this witness, Paul Geiger—

THE COURT: *You just wait out there. You do not break in on the trial.*" (Emphasis in original.)

When appellant was called before the court, the assistant public defender did not appear and offer his representation nor did appellant at that time indicate that he had counsel available or that he desired the assistance of counsel.

the Supreme Court expanded the *Gideon* principle [5] by holding that an indigent defendant may not be tried for an offense, even though it is classified as "petty," when he is subject to a term of imprisonment without being furnished counsel or without validly waiving counsel. We agree with appellant that *Argersinger* is controlling here, and so held in *Commonwealth v. Abrams,* 461 Pa. 327, 336 A.2d 308 (1975). In *Abrams,* which is directly on point, we said:

> "During the contempt proceedings in the trial court [following his refusal to testify], [appellant] was without the assistance of legal counsel. Moreover, he was not advised of his right to such assistance and admittedly did not knowingly and intelligently waive this right. Under these circumstances, the proceedings violated due process and render the adjudication of contempt null and void.
>
> See *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), and *Commonwealth v. Bethea,* 445 Pa. 161, 282 A.2d 246 (1971)."

Id. at 328–329, 336 A.2d at 309. Here, as in *Abrams,*[6] the summary conviction for contempt of court of a witness who was not represented by counsel cannot stand,

5. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

6. *See In re Di Bella,* 518 F.2d 955, 17 Crim.L.Rep. 2334 (2d Cir., 1975):
   "In *Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) the Court held that, absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he is represented by counsel at his trial. The Circuits with an opportunity to do so have concluded that this right must be extended to a contempt proceeding, be it civil or criminal, where the defendant is faced with the prospect of imprisonment. *U. S. v. Sun Kung Kang,* 468 F.2d 1368, 12 Cr.L. 2098, (9th Cir. 1972); *In re Kilgo,* 484 F.2d 1215, 14 Cr.L. 2087 (4th Cir. 1973); *Henkel v. Bradshaw,* 483 F.2d 1386 (9th Cir. 1973). We agree."

and the appellant's judgment of sentence must be vacated.[7]

Judgment of sentence vacated, cause remanded for a new trial.

EAGEN, J., joins and filed a concurring opinion.

POMEROY, J., filed a dissenting opinion.

NIX, J., filed a dissenting opinion in which JONES, C. J., and POMEROY, J., join.

EAGEN, Justice (concurring).

While I agree with Mr. Justice Roberts that the absence of counsel during the contempt proceedings below renders the adjudication of contempt null and void, I believe it necessary to set forth these additional observations.

In *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the United States Supreme Court held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether clas-

7. Our disposition of the right-to-counsel issue makes it unnecessary for us to decide two of appellant's other assignments of error: (1) that a summary proceeding holding anyone guilty of contempt of court is a denial of due process; and (2) that appellant's refusal to testify was privileged. The remedy for the first assignment is no different than that which we order today; that is, a new trial. The second assignment may be presented to the court on retrial.

Appellant also urges that because the court held him to be in contempt on the basis of his statement, under oath, that he would not testify, and did not actually witness a refusal to answer a question asked of appellant, his act could not, as a matter of law, be contemptuous. We reject this claim. The trial court was under no obligation to go through the empty formality of asking appellant questions to determine if his persistent refusal to testify was sincere. A refusal to testify, without more, may be sufficient to establish contempt of court. We do not, of course, hold that appellant was in contempt of court; that is initially for the trial court. We do hold that there is no need to verify, by asking questions, a witness' statement that he will not testify. The statement alone may be taken as the equivalent of the act.

sified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Id.* at 37, 92 S.Ct. at 2012. Subsequently, in *Commonwealth v. Abrams,* 461 Pa. 327, 336 A.2d 308 (1975), this Court interpreted *Argersinger* as mandating an absolute right of counsel to any criminal defendant facing the possibility of imprisonment. Despite this, the dissent would permit the imposition of sentence upon Geiger for his allegedly contemptuous behavior although he was without representation by counsel during the contempt proceedings below.

The dissent relies upon *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in support of the proposition that the *Argersinger* principle is not applicable to criminal contempt proceedings. However, neither decision lends support to the dissent's position.

In *Gagnon,* the United States Supreme Court held that, while due process rights must be accorded the probationer at probation revocation proceedings (see *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)), there exists no absolute right to be represented by counsel at such proceedings. Reasoning that revocation of probation (and parole) proceedings are not part of the criminal prosecution arising, rather, after the termination of the prosecution and the imposition of sentence,[1] the Supreme Court was able to distinguish *Argersinger,* stating: "We do not, however, draw from *Gideon* and *Argersinger* the conclusion that a case-by-case approach to furnishing counsel is necessarily inadequate to protect constitutional rights asserted in various types

---

1. In *Morrissey v. Brewer,* supra, the Supreme Court, in the context of parole revocation proceedings noted:
   "Parole arises after the end of the criminal prosecution, including imposition of sentence. . . . Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions."
   *Id.* 408 U.S. at 480, 92 S.Ct. at 2600.

of proceedings: there are critical differences between criminal trials and probation or parole revocation hearings, and both society and the probationer or parolee have stakes in preserving these differences." *Gagnon v. Scarpelli,* supra, 411 U.S. at 788–789, 93 S.Ct. at 1763.[2]

However, the Gagnon Court expressly recognized the continued vitality of *Mempa v. Rhay,* 389 U.S. 128, 88 S. Ct. 254, 19 L.Ed.2d 336 (1967), wherein the Supreme Court, after noting that sentencing is a critical part of the criminal prosecution, held that a probationer *is entitled* to be represented by counsel at a combined revocation and sentencing hearing.[3] Because of this specific reaffirmance in *Gagnon* of the *Mempa* decision, it is evident that the holding in *Gagnon* must be limited to those situations where the proceedings are not part of the criminal prosecution.[4]

It, therefore, follows that for those proceedings which are part of the criminal prosecution process the rationale of *Argersinger* is applicable with the concomitant mandatory right to be represented by counsel. Inasmuch as

**2.** In appraising these "critical differences", the Supreme Court stated:
"In a criminal trial, the State is represented by a prosecutor; formal rules of evidence are in force; a defendant enjoys a number of procedural rights which may be lost if not timely raised; and, in a jury trial, a defendant must make a presentation understandable to untrained jurors. . . . In a revocation proceeding, on the other hand, the State is represented, not by a prosecutor, but by a parole officer with the orientation described above; formal procedures and rules of evidence are not employed; and the members of the hearing body are familiar with the problems and practice of probation or parole."
*Gagnon v. Scarpelli,* supra, 411 U.S. at 789, 93 S.Ct. at 1763.

**3.** In *Gagnon,* the probationer, Scarpelli, had been sentenced at the time of his trial and then placed on probation. In *Mempa,* the probationer's sentencing had been deferred subject to probation. Therefore, in *Mempa,* the revocation proceedings included the initial imposition of sentence.

**4.** Similarly, in *Wolff v. McDonnell,* supra, relied upon by the dissent, the Supreme Court based its conclusion, that the right to counsel is not mandatory in prison disciplinary proceedings upon the fact that such proceedings are not part of a criminal prosecution. *Id.* 418 U.S. at 556, 94 S.Ct. at 2974.

criminal contempt proceedings are part of the prosecution process, see *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), this dissent's position that there exists no absolute right to counsel in such proceedings is clearly unwarranted.

The dissent further contends that the right to counsel is incompatible with the nature of the summary contempt proceeding. This reasoning is without either support or merit. As the dissent readily concedes, counsel could assist and advise the contemner as to considerations which might mitigate a charge of contempt or the sentence thereunder. This factor alone, is sufficient to demonstrate the vital role which counsel could have in the summary contempt proceedings. See *United States v. Wilson,* 488 F.2d 1231 (2d Cir. 1973), rev'd on other grounds, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975).

POMEROY, Justice (dissenting).

The Court is accurate in stating that our recent decision in *Commonwealth v. Abrams,* 461 Pa. 327, 336 A.2d 308 (1975) is directly on point and would compel reversal of appellant's conviction for contempt of court. In my view, however, our decision in *Abrams* was wrongly decided and should be overruled. I join in Mr. Justice NIX's separate dissenting opinion expressing this view, and submit these additional reasons as to why *Abrams,* and therefore today's majority opinion also, are mistaken.

*Abrams* held as it did, viz., that counsel was required in a summary proceeding for criminal contempt, because we read *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) to require that result. My further study satisfies me that we read *Argersinger* too broadly. *Argersinger,* a sequel to *Gideon v. Wainwright,* 372 U.S 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), extended the right to counsel to any offense, whether classified as

a felony or a misdemeanor, if a term of imprisonment could be imposed upon conviction of the offense. Speaking for the majority of the Court, Mr. Justice Douglas stated: "We hold . . . that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." 407 U.S. at 37, 92 S.Ct. at 2012, 32 L.Ed.2d at 538. *Argersinger*, like *Gideon*, was concerned solely with a criminal trial as it is generally conceived, and I am now satisfied that the broad language of its holding must be read in that context. None of the opinions filed in that case so much as mentions the offense of contempt of court.

Contempt of court committed in the presence of the court has never been considered as a normal offense nor the subject of a normal criminal trial. The proper procedure in cases involving direct criminal contempt was set forth succinctly in *Cooke v. United States*, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767, 773 (1924). The contempt there involved was committed by the contemnor through a letter to the trial judge. The Supreme Court found that this conduct did not qualify as a "direct" contempt in that it had not been committed in open court during judicial proceedings. Therefore, held the Court, the accused was entitled to the usual due process amenities— notice of the charges against him, notice of the time and place for hearing, opportunity to be heard and the right to representation by counsel. 267 U.S. at 537, 45 S.Ct. at 395, 69 L.Ed. at 774. Contrariwise, said Chief Justice Taft in *dictum*, where the contumacious conduct is committed in the presence of the court, the due process requirements are less rigid and there is no right to counsel.

"To preserve order in the courtroom for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court, when occurring in open court. *There is no need of evidence or assistance of*

*counsel* before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary. It has always been so in the courts of the common law, and the punishment imposed is due process of law." 267 U.S. at 534, 45 S.Ct. at 394, 69 L.Ed. 773.

This statement of the federal law has never been questioned; indeed, *Cooke* was but recently cited with apparent approval by the Supreme Court in *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975).* These principles, relative to direct criminal contempt, have likewise been recognized in the courts of Pennsylvania. In *Levine Contempt Case*, 372 Pa. 612, 618, 95 A.2d 222, 225 (1973), this Court said:

"Generally speaking, one is guilty of contempt when his conduct tends to bring the authority and administration of the law into disrespect. The right to punish for such contempt is adherent in all courts. When it is committed in its presence the court may, in punishing the offender, act of its own knowledge without further process, proof, or examination."

It is true, of course, that in *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), the Supreme Court held that the offense of criminal contempt of court is sufficiently similar to any other type of criminal offense as to come within the Sixth Amendment guarantee of right to trial by jury, provided the offense is punishable by imprisonment of six months or more. Petty con-

---

* *United States v. Wilson*, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), was concerned with the application of Federal Rule of Criminal Procedure 42(a) which sets forth the conditions under which the summary disposition of criminal contempt is appropriate. The majority opinion in *Wilson* makes clear, however, that the rule is declaratory of the law as it existed at the time of its promulgation, citing *Cooke*. While one of the contemnors in *Wilson* did have counsel present at the time of the adjudication of contempt, it does not appear that counsel participated in the proceedings, and there is nothing whatever to suggest that the result in *Wilson* would have been different had no counsel been available.

tempts continue not to require a jury trial. I have no doubt that any criminal contempt proceeding as to which the right to trial by jury attaches carries with it also the right to counsel. This is because, in such a case, the consequences of conviction are simply too harsh to justify disposition by summary adjudication, and therefore, normal due process rights are to be afforded the contemnor.

Where, however, the offense of direct criminal contempt is not punishable by more than six months imprisonment, as in *Wilson* and the case at bar, the use of the court's power of summary disposition is appropriate, and only minimal due process rights attach. Justification for this is found in the same factors which legitimatize summary disposition at all—the necessity of preserving the integrity and orderly progression of the judicial proceedings, *Wilson, supra* 421 U.S. at 314, 95 S.Ct. at 1805, 44 L.Ed.2d at 192, 193, and the fact that the contemptuous conduct occurs in the presence of the court, *Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974).

Because summary contempt is a special kind of sanction to be imposed only in rare situations, it should not be employed lightly or except as a last resort. In the words of Chief Justice Taft, ". . . [I]ts exercise is a delicate one, and care is needed to avoid arbitrary or oppressive conclusions." *Cooke v. United States, supra* 267 U.S. at 539, 45 S.Ct. at 395, 69 L.Ed. at 775. See *Codispoti v. Pennsylvania, supra* 418 U.S. at 513–14, 94 S.Ct. at 2692, 41 L.Ed. at 920; *Harris v. United States,* 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965). Consequently, in a case such as the one at bar, the trial judge should be meticulous to make sure that the silent witness has "an opportunity to speak in his own behalf in the nature of a right of allocution." See *Groppi v. Leslie,* 404 U.S. 466, 504, 92 S.Ct. 582, 587, 30 L.Ed.2d 632, 639 (1972). The judge should, of course, also be satisfied that the refusal to answer questions is truly contuma-

cious, and does not stem from any inability to articulate or to communicate the basis for his belief that the maintenance of silence is necessary to protect his interests. The instant record adequately demonstrates that this was done. Finally, the necessity for the drastic summary procedure must be clear. Where, as in *Wilson* and in the case at bar, the witness's refusal to testify is clearly disruptive of the proceedings in that his testimony is essential to the prosecution (or the defense) I believe the requirement of necessity has been met. Thus I would affirm judgment of the court of common pleas.

NIX, Justice (dissenting).

The principal thrust of appellant's argument to this Court was that the use of a summary proceeding in the factual setting presented was a violation of due process of law. The majority in its opinion elected not to address this issue and thereby in my judgment fell into error. I believe that a mandatory right of counsel is incompatible with a summary proceeding. Thus, a finding that due process is not offended by summary disposition in cases of this type also resolves the issue as to the right of counsel in these situations.

The right to counsel necessarily embraces the right to elect counsel of one's choice, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Moore v. Jamieson*, 451 Pa. 299, 306 A.2d 283 (1973); *Commonwealth ex rel. Goodfellow v. Rundle*, 415 Pa. 528, 533, 204 A.2d 446, 448 (1964), and requires a reasonable opportunity to make that selection, *Powell v. Alabama, supra*. Additionally, counsel, when retained or appointed, must be given a fair opportunity to become acquainted with the facts and must be provided with sufficient time to prepare a defense, *Powell v. Alabama, supra; Commonwealth v. Ehly*, 457 Pa. 225, 319 A.2d 167 (1974); *Commonwealth v. Logan*, 456 Pa. 508, 325 A.2d 313

(1974). The right to use summary disposition is premised upon the need for an immediate response to the contumacious conduct. *Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974); *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1973); *Groppi v. Leslie,* 404 U.S. 496, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972); *Johnson v. Mississippi,* 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971). Thus, the appendage of a mandatory right to counsel would render it virtually impossible, in many situations, to have the immediate and authoritative response upon which the right to summary disposition is conditioned.[1] The effect of the majority's ruling today is to deprive the trial judge of the most effective weapon within his "arsenal of authority" to take immediate corrective steps when needed to restore order and maintain the dignity and authority of the court.

Appellant argues that summary proceedings in a direct criminal contempt action is "a solitary vestige of more primitive times" and thus should be found to be repugnant to present day concepts of fundamental fairness. This view was expressly rejected by the United States Supreme Court in its recent decision in *United States v. Wilson,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186, 43 U.S.L.W. 4584 (1975). In *Wilson, supra,* the Court was presented with a factual situation quite similar to that before us here. Respondents had been charged along with one Anderson in separate indictments for separate bank robberies. Respondents, who pleaded guilty, were summoned as prosecution witnesses at Anderson's trial but refused to testify on Fifth Amendment grounds and

---

1. While there was some argument to the contrary, the majority properly found that appellant was not represented at the time of the contumacious conduct. Nor was there any basis for concluding that counsel could have been immediately available. See footnote 4 of the majority opinion.

persisted in that refusal after being granted immunity.[2] The District Court summarily held them in contempt under Fed.Rule Crim.Proc. 42(a). The Court of Appeals reversed, holding that the use of the summary contempt power under Rule 42(a) was improper, and remanded for proceedings under Rule 42(b), which calls for disposition of criminal contempt only after notice and hearing and "*a reasonable time for the preparation of the defense.*" In an opinion written by Chief Justice Burger and joined by Justices Stewart, White, Blackmun, Powell, and Rehnquist, the majority of the Court held that the District Court properly imposed summary contempt punishment under the circumstances.

Pertinent to our present inquiry, that Court found that although the refusals were not delivered disrespectfully, the conduct was nevertheless contemptuous since they were intentional obstruction of court proceedings. Rejecting the Court of Appeals' view that only disorderly or obstreperous interference with court proceedings provides an occasion for use of the summary contempt power, the Court observed:

> "The refusals were contemptuous of judicial authority because they were intentional obstructions of court proceedings that literally disrupted the progress of the trial and hence the orderly administration of justice. *Yates v. United States,* 227 F.2d 844 (C.A. 9 1955). Respondents' contumacious silence, . . ., impeded the due course of Anderson's trial perhaps more so then violent conduct in the courtroom. Violent disruptions can be cured swiftly by bodily removing the offender from the courtroom, or by physical restraints, *Illinois v. Allen,* supra [*Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353]; see *Ex*

2. Here Geiger did not attempt to invoke a Fifth Amendment privilege nor could he successfully have maintained such a position. "(b) An acquittal conclusively negatives criminality; no privilege can therefore be based upon the charge of crime." 8 Wigmore, Evidence § 2279 (McNaughton Rev.).

*parte Terry,* 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888), and the trial may proceed. But as this case demonstrates, a contumacious refusal to answer not only frustrates the inquiry but can destroy a prosecution. Here it was a prosecution; the same kind of contumacious conduct could, in another setting, destroy a defendant's ability to establish a case." *United States v. Wilson, supra* at 315, 95 S.Ct. at 1806. (Footnote omitted).

The fact that the Commonwealth had available, in this instance, the prior testimony of Geiger given during the first trial for Crawford was a purely fortuitous circumstance which in no way changes the nature of his refusal to testify at the second trial. Additionally, the jury was entitled to hear the evidence from the mouth of the witness and not be forced to rely upon testimony given at some earlier occasion. Here, as in *Wilson,* the refusal to testify might well have frustrated justice and the trial judge should have been empowered to take immediate remedial action. As noted in *Wilson,* the power of summary disposition for this type of contempt must be available to vindicate the court's authority *as well as to provide the recalcitrant witness with some incentive to testify.* It is therefore eminently apparent that the United States Supreme Court not only recognizes the need for summary dispositions in cases such as the one before us, but also finds that such a procedure is not repugnant to the present day concept of due process.

Focusing upon the right of counsel, while it is true that the respondents in *Wilson* were represented at the time of the contumacious conduct, it is clear from the tenor of the opinion the power of summary disposition was not conditioned upon the fact of representation.[3]  Further,

---

**3.** The fact that the Supreme Court sustained the District Court's decision to refuse a continuance for "a reasonable time for the preparation of the defense" strongly suggests that the Supreme Court did not consider representation by counsel as crucial in this type of proceeding.

there is nothing in the language of Rule 42(a) which would suggest that the right to counsel is mandated.[4]

Undoubtedly, the majority's result was precipitated by its reluctance to depart from its recent pronouncement in *Commonwealth v. Abrams,* 461 Pa. 327, 336 A.2d 308 (1975). The error in *Abrams* was occasioned by an incorrect interpretation of the United States Supreme Court's decision in *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). While there is an understandable hesitancy to disturb a recent decision, I believe that course of action to be preferable to the perpetuation of an error that threatens the very foundations of our legal system.

In *Argersinger, supra,* the Court was concerned with stressing that the Sixth Amendment right to counsel was not dependent, in criminal cases, upon whether the offense was classified as a serious or petty one. Subsequent decisions have made clear that the *Argersinger* principle, in spite of its admittedly broad language, was not intended to apply to *all proceedings* which could possibly result in the loss of an individual's liberty. See *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L. Ed.2d 935 (1974); *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1974).[5] I believe that it is a reasonable interpretation of the opinion in *Argersinger*

---

**4.** Rule 42(a) provides:
   "Rule 42. Criminal Contempt.
   (a) *Summary Disposition.* A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

**5.** While *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed. 2d 935 (1974) and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1974) are not binding precedent in that they relate to persons possessing less than the panoply of rights of the average citizen, they are pertinent in that they suggest that the *Argersinger* decision is not without limitations.

to conclude that it did not intend to encompass summary punishments for direct contempts.[6]

First, it is significant that although the opinion referred to specifically all conceivable categories of criminal cases, e. g., felonies, misdemeanors, petty offenses and even traffic violations, it did not mention direct criminal contempts which have always been treated as unique under our law. Secondly, since the United States Supreme Court in *Wilson* has recently reaffirmed the right to punish summarily for direct criminal contempt, and as stated, I believe the right to counsel is incompatible with summary disposition, I must conclude that the Court did not intend to mandate counsel in such proceedings. Thirdly, because the incidence of disruptive behavior in our courts has reached an unprecedented level, it is unlikely that the United States Supreme Court would select this moment to remove the trial judge's most effective weapon against trial disruptions. Lastly, and most importantly, the role of counsel is of limited value in such proceedings and thus his absence does not offend our sense of justice.

The hallmark of direct contempt is that the conduct occurs in the presence of the court and thus the need for the adjudicative process is eliminated.

"The procedures which are used to deal with a criminal contempt differ depending upon whether or not the

6. The majority offers *In re Di Bella*, 518 F.2d 955, 17 Crim.L.Rep. 2334 (2d Cir. 1975); *In re Kilgo*, 484 F.2d 1215 (4th Cir. 1973); and *United States v. Sun Kung Kang*, 468 F.2d 1368 (9th Cir. 1972) in support of its position. I do not agree. In each of these cases, the courts were concerned with the failure of a witness to testify during a grand jury proceeding. *Wilson* clearly distinguished the grand jury proceeding from the on-going trial situation and determined that in the former situation, Rule 42(a) (summary disposition) was not applicable. See also *Harris v. United States*, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965). The majority's reliance upon *Henkel v. Bradshaw*, 483 F.2d 1386 (9th Cir. 1973) is also misplaced. The action therein was an attachment after the failure to comply with an order of support. This is clearly not within the area of cases where summary relief would be appropriate.

contempt was committed in the actual view or hearing of the judge. If the contempt was committed within the presence of the court, it is then punishable by the judge at once, summarily, on his own knowledge, without a formal written accusation, arraignment, plea, proof, or other trappings of an ordinary criminal prosecution." LaFave & Scott, *Criminal Law*, § 7, at 43 (1972).

\* \* \* \* \* \* \* \*

"There is then no question of identity, nor is hearing in a formal sense necessary because the judge has personally seen the offense and is acting on the basis of his own observations. Moreover in such a situation, the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right of allocution." (Footnotes and citations omitted). *Groppi v. Leslie, supra* 404 U.S. at 504, 92 S.Ct. at 587.

\* \* \* \* \* \* \* \*

"If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires . . . that the accused be accorded notice and a fair hearing. . . ." *Johnson v. Mississippi*, 403 U.S. 212, 215, 91 S.Ct. 1778, 1780, 29 L.Ed.2d 423 (1971) quoting from *In re Oliver*, 333 U.S. 257, 275–76, 68 S.Ct. 499, 92 L.Ed. 682 (1948).

At best counsel's participation could only assist in attempting to formulate mitigating or extenuating circumstances for purposes of determining the appropriate penalty. In this jurisdiction the absolute right of appeal provides ample protection for this interest.

In my judgment, the judgment of sentence should be affirmed.

JONES, C. J., and POMEROY, J., join in this dissenting opinion.