409 A.2d 392

COMMONWEALTH of Pennsylvania

v.

**Julio Ortiz TIRADO.**

**Appeal of Aida E. Feliciano TIRADO.**

Supreme Court of Pennsylvania.

Submitted Oct. 11, 1979.

Decided Dec. 21, 1979.

David R. Eshelman, Asst. Public Defender, for appellant.

Charles M. Guthrie, Jr., Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION

LARSEN, Justice.

This is an appeal of appellant Aida E. Feliciano Tirado's criminal contempt conviction.

This conviction arose as follows: On June 13, 1977, a jury was sworn in the trial of Julio Ortiz Tirado, appellant's husband, who was charged with recklessly endangering another person, aggravated assault, and simple assault in connection with the beating of their 2½-year old child. After the Commonwealth presented its opening argument, the jury was recessed and the court met with the prosecutor and

counsel for appellant's husband. At this meeting, the court allowed the Commonwealth to summon appellant (a Commonwealth witness) in order to "inquire . . . of her [appellant's] intentions with respect to testifying and competency". Appellant was sworn and testified as follows (in pertinent part):

BY MR. WELZ [PROSECUTOR]

Q . . . [Y]ou were served with a subpoena to appear in court in connection with this case; is that correct?

BY MRS. TIRADO [APPELLANT] A Yes.

Q And did you consult with me prior to selecting the jury this afternoon?

A Yes.

Q Did you indicate to me that you were not willing to testify in this case?

A *Yes.*

Q Now, did you give a statement to Officer Leon Krammes of the Bureau of Reading Police?

A *I don't remember.*

Q Reading Bureau of Police; do you remember giving a statement with regard to this incident at all?

A This incident?

Q Yes.

A Yes.

Q Do you remember discussing this matter with the police?

A I discussed it, *but I don't remember it,* exactly the words I said in that.

Q Okay. Were you present at this time when Mr. Tirado entered the house and assaulted the young boy?

A *I don't remember.*

BY THE COURT:

Q Mrs. Tirado, the law says that under normal circumstances, or usually, a husband and wife do not have to testify against one another.

A Yes, I understand that.

Q But in cases where violence is done or threatened to be done to the person of either of them, or of their children, or children in their custody, they are competent, and can be called to testify. I would tell you that as I understand the nature of the questions to be asked of you, that you would be competent to testify, and that if you refused to testify, you would be considered in contempt of court, and would be so held in contempt, and in the exercise of my judgment, I could have you imprisoned for a term of not longer than six months. Do you understand that?

A Yes, I understand.

Q Now, knowing this, would you be willing to testify?

A *I exactly don't remember what happened. One reason was, I was drinking, and I don't exactly remember.*

Q Well, do you remember anything about the incident involving your child, Julio Mirado, age approximately two and a half years? You know the child we are referring to?

A Yes.

Q And this incident occurred on or about January 7th of this year. Do you remember the time? Do you remember anything about the incident?

A *I don't know.* The only thing I remember was, this was Christmas for Puerto Ricans and I was drinking.

Q Were you completely intoxicated?

A I was drinking since early noon with my husband, then he went to see his parents.

Q To see his parents, is that it?

A Yes.

Q Do you remember when he came back to your house?

A *No,* I was sleeping when he came in the house.

Q Did you see anything of this—

A I was in the bathroom. I woke up dozey and I went into the bathroom.

Q Did you see him there with the child?

A I went into the kitchen. I didn't see anything.

Q You didn't see anything.

A *No.*

Q What about the—will you show her the statement? Is it a signed statement by her?

MR. WELZ [PROSECUTOR] Yes, Your Honor.

THE COURT: Show it to her.

BY THE COURT:

Q Do you remember giving this statement and signing it?

A He slapped me?

Q I don't know. Just read it.

A *I don't remember.* I was drunk.

Q Is that your signature to it?

A Yes.

Q But you don't remember telling these things to the officer?

A I was so drunk, *I don't remember.* The only thing I remember was when I called him at his mother's place.

Q Was that before or after this incident?

A After I was home.

Q Do you remember anything about this matter at all?

A *No. I don't, no.*

Q Do you remember signing this paper here?

A *It's my signature, but I don't remember signing it.*

Q But it is your signature?

A Yes, it is.

Q How long have you been married?

A February 28th.

Q That was after the time of this alleged incident?

A Yes.

Q You are living with your husband now?

A Yes.

Q   How are you getting along together?

A   Fine.   [Emphasis provided]

After this examination, the court told appellant that "the Commonwealth believes that you have not told the truth when you told me that you did not remember anything of what went on   .   .   .   concerning the case here in court" and that if the Commonwealth proves this, "then you would be in contempt of court".   An attorney was provided for appellant and a contempt proceeding was scheduled for the next day.

At the start of said contempt proceeding, appellant was examined and she reiterated the testimony that she gave on the previous day:

THE COURT: .   .   .   .   Mrs. Tirado, did you understand yesterday, and do you still understand that I would like you to testify as to the matters contained in this statement that you signed and that you read yesterday?   I believe it is Exhibit 1.   Do you understand I want you to testify about that?

THE WITNESS [APPELLANT]:   Well, *I don't remember* what I—what's—I read what's in it, but *I don't remember* what—

THE COURT:   I understand, but you understand that I wanted you to testify about that?

THE WITNESS:   Yes, I understand.

THE COURT:   And you say you don't remember?

THE WITNESS:   *Yes.*

THE COURT:   All right.

\*     \*     \*     \*     \*     \*

[APPELLANT'S DEFENSE COUNSEL]:   Will you be willing to testify concerning the statement?

THE WITNESS:   I am willing to testify, but—as to what I remember, but not to what's in there, because *I actually don't remember any of it.*

THE COURT:   All right.   [Emphasis provided]

The next witness at the contempt proceeding was Reading Police Officer Norman E. Focht, who testified that shortly

after the child's beating, appellant gave him a signed statement. In this statement, appellant said that she observed her husband slap their child, hit the child's head on the inside of the bathtub, and "turn . . . the water on [in the bathtub] and hold the . . . [child's] head under the water." (This is the signed statement referred to during appellant's examinations, *supra.*) Officer Focht testified that when appellant gave him the aforementioned statement, she was not under the influence of intoxicating beverages.

Officer Focht's testimony was corroborated by Reading Police Officer Leon C. Krammes, Jr., who testified that he was present when appellant gave the aforementioned statement to Officer Focht and that, at the time of the statement, appellant was not under the influence of intoxicating beverages. Further, Reading Police Detective James Hullinger testified that within four days of the beating, appellant told him (during an interview) "essentially the same story . . . as . . . was given [by appellant] to the original investigating officers [Focht and Krammes]" regarding the child's beating.

Additionally, Assistant District Attorney Stephen G. Welz (the attorney assigned to prosecute appellant's husband) testified at the contempt proceeding that prior to the trial of appellant's husband, appellant told him (Welz) that her husband "hit" the child. Welz also testified that appellant told him (Welz) that she was not willing to testify at her husband's trial and that she wanted the charges against her husband dropped.

At the conclusion of the contempt proceeding, the court found appellant to be in contempt of court and sentenced her to a four-month imprisonment, a $100 fine, and the costs of prosecution. The Commonwealth then informed the court that it had "no other testimony" to present in the case of appellant's husband; counsel for appellant's husband moved for dismissal of the charges proferred against his client and the court dismissed said charges "for want of evidence."

Appellant then appealed her contempt conviction to this Court.

Appellant's first contention is that there was insufficient evidence to support her contempt conviction. The Act of June 16, 1836, P.L. 784, § 23, 17 P.S. § 2041 (1962) provided:

> The power of the several courts of this commonwealth to issue attachments and to inflict summary punishments for contempts of court shall be restricted to the following cases, to-wit:

> I. To the official misconduct of the officers of such courts respectively;

> II. *To disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court*;

> III. To the misbehavior of any person in the presence of the court, thereby obstructing the administration of justice. [Emphasis provided][1]

In the past, this Court has held that a witness' refusal to testify is grounds for contempt. *Commonwealth v. Strickler*, 481 Pa. 579, 393 A.2d 313 (1978); *Commonwealth v. Crawford*, 466 Pa. 269, 273 n.7, 352 A.2d 52, 54 n.7 (1976); *In re Martorano*, 464 Pa. 66, 346 A.2d 22 (1975). In the instant case, appellant's testimony was so evasive that it, in fact, amounted to a refusal to testify. Even after the court informed appellant that her testimony (or lack thereof) was contemptuous, she persisted in answering the propounded questions with the reply that she did not "remember".

In fact, the evidence brought forth at the contempt proceeding contradicts appellant's testimony. Appellant's testimony that she did not "remember" the incident was contradicted by two witnesses, both of whom testified that prior to trial, appellant stated that she saw her husband beat the child. Appellant's testimony that she did not remember giving the aforementioned signed statement to police because she was intoxicated was contradicted by the two police

1. This statute was reenacted effective June 27, 1978. *See* 42 Pa.C.S.A. 4131 (1979 Pamphlet).

officers who elicited the statement, both of whom testified that she was not intoxicated when the statement was given. Furthermore, at the conference (attended by the judge, the prosecutor, and counsel for appellant's husband) held during the trial of appellant's husband, appellant *admitted* that prior to the selection of the jury for said trial, she told the prosecutor that she was not willing to testify at the trial.

Clearly, appellant's evasiveness as a witness—which resulted ultimately in the dismissal of the charges against her husband—warranted the exercise of the court's power to punish for contempt.

■ Appellant claims that her testimony (or lack thereof) did not "thwart the Commonwealth's case" since the Commonwealth could have "easily . . . qualified" appellant's signed statement as evidence against appellant's husband. This argument is without merit. There is no requirement that in order for a witness to be convicted of criminal contempt, he must *completely* "thwart" a case. Assuming for the sake of argument that there was other evidence that the Commonwealth could have presented against appellant's husband, there is no question that appellant's refusal to testify would have still constituted contempt.

Additionally, appellant argues that "[a]lthough the lower court may have suspected . . . [appellant's] testimony to be perjurous, the Commonwealth never proved this to be so, and if it did, arguendo, perjury is an insufficient basis for a contempt finding." This claim is meritless—appellant's contempt conviction was not based on a finding that she committed perjury. As the lower court stated in its opinion, appellant "argues that *perjury* was the basis of the contempt. Actually, refusal to testify is the basis." [Emphasis in original] [2]

2. Appellant also argues that she "was never called to testify before a jury or in any proceeding other than her own contempt hearing . . . [and that this] precludes any finding of contemptuous conduct." This claim is spurious since, in fact, appellant was summoned to testify at the conference (attended by the judge, the prosecutor, and counsel for appellant's husband) held during the trial of appellant's husband.

Appellant's final contention is that the lower court "violated due process" on the grounds that appellant was "made to testify without being represented by counsel". As support for this proposition, appellant cites this Court's opinion in *Commonwealth v. Crawford*, 466 Pa. 269, 352 A.2d 52 (1976). In *Crawford*, this Court reversed a witness' contempt conviction on the grounds that he was not represented by counsel during the summary contempt proceeding. The instant case is distinguishable from *Crawford* in that appellant was represented by counsel *throughout* the contempt proceeding.

Judgment of sentence affirmed.

EAGEN, C. J., concurs in the result.

ROBERTS, J., filed a dissenting opinion.

NIX, J., filed a dissenting opinion.

MANDERINO, J., did not participate in the consideration or decision of this case.

ROBERTS, Justice, dissenting.

Appellant Aida E. Feliciano Tirado was convicted of criminal contempt and sentenced to four months in prison, as well as ordered to pay a $100 fine and costs of prosecution. Appellant now challenges judgment of sentence on direct appeal.

The record demonstrates that the court imposed sentence without due consideration for this Commonwealth's statutory sentencing guidelines. See Sentencing Code, Act of December 30, 1974, P.L. 1052, §§ 1 et seq., as amended, 18 Pa.C.S.A. §§ 1301 et seq. (Supp. 1979–80). The sentencing court did not comply with section 1325 which requires consideration of "the history, character, and condition of the defendant . . ." before imposing "total confinement." Nor did the court follow Section 1322's direction to "accord weight in favor of an order of probation . . ." to the twelve grounds enumerated in that section. Rather, the

court restricted its sentencing consideration exclusively to the nature and circumstances of the crime:

"With respect to the sentence imposed, it may be noted that the appellant was the only substantial Commonwealth witness and that as a result of her refusal to testify the serious charges against the defendant were required to be dismissed for want of evidence (N.T. 33)."

From this record, it must be concluded that the court failed to consider the statutory factors set forth in the "total confinement" and "probation" sections of the Sentencing Code. This failure necessitates vacation of judgment of sentence and remand for resentencing in conformity with the Sentencing Code. See *Commonwealth v. Martin*, 466 Pa. 118, 351 A.2d 650 (1976) (sentencing court acted improperly in automatically imposing sentence based solely on the crime); see generally *Commonwealth v. Kostka*, 475 Pa. 85, 379 A.2d 884 (1977).

NIX, Justice, dissenting.

The majority sustains the finding of criminal contempt premising its result upon the conclusion that appellant improperly refused to testify at her husband's trial. I must disagree because I do not believe that there was a refusal to testify in this case. To the contrary, appellant was more than willing to testify as to her present recollection. The crux of the dispute in this case is that the Commonwealth and the trial court were satisfied that appellant was lying as to the extent of her present recollection.

The evidence produced at the contempt hearing clearly supported a finding that appellant was lying when she testified that she did not have a present recollection of the events described in her initial statement to the police. While this may have been legally sufficient to prove perjury, there is some question whether a finding of perjury justifies a summary conviction for contempt. *See e. g. Commonwealth v. Harris*, 409 Pa. 163, 185 A.2d 586 (1962). This question was ignored by the majority. I dissent.