J-A02036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MASSAI SHAWN DICKEY, | |
| Appellant | No. 700 WDA 2017 |

Appeal from the Judgment of Sentence entered May 1, 2017,
in the Court of Common Pleas of Cambria County,
Criminal Division, at No(s): CP-11-MD-0000604-2017.

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MARCH 9, 2018**

Appellant, Massai Shawn Dickey, appeals from the judgment of sentence imposed after the trial court found him in direct criminal contempt of court.[1] We affirm.

The pertinent facts and procedural history are as follows:  On April 10, 2017, the Commonwealth called Dickey to testify as a witness in a murder trial.  Dickey took the witness stand, was sworn in, and began to give testimony.  In response to further questioning by the Commonwealth, however, Dickey stated, "I can't do this."  N.T., 4/10/17, at 4.  When the trial court spoke with the attorneys for the parties at sidebar, defense counsel

_____

[1] 42 Pa.C.S.A. § 4132(3).

informed the court that Dickey had other criminal charges pending, and that Dickey had a separate attorney in that matter.

The trial court took a recess and contacted the attorney who represented Dickey in his criminal case. After speaking with him, the trial court placed on the record the fact that, although Dickey's attorney was unaware that Dickey would be testifying at the murder trial, he did not have any objection to Dickey testifying because the murder case was unrelated to the criminal charges that Dickey was facing.

Dickey then returned to the witness stand, and the Commonwealth resumed its questioning of him. Once again, Dickey stated, "Yes. See, I can't do this, I plead the fifth." N.T., 4/10/17, at 9. The trial court informed Dickey that it was compelling him to answer, but Dickey replied, "I just won't answer." *Id.* After the court and the parties' counsel discussed whether, given Dickey's refusal to testify, the Commonwealth would be allowed to play an audio recording of his previous conversations with the police, the trial court directed the Commonwealth to call its next witness, and stated that it would address Dickey's refusal to testify at the next recess and without the jury present.

After the trial court called the recess, and the jury left the courtroom, the trial court addressed counsel for the parties as follows:

> So I wanted to address the issue of [Mr. Dickey]. There is no one else in the courtroom right now, so that works. If Mr. Dickey refuses to testify what I would like to do is have the Commonwealth put in an offer of proof as to the testimony that they intend to elicit outside of the hearing of the jury and then we'll bring Mr. Dickey up. And assuming, as both counsel had indicated from both sides, that they do

- 2 -

> not believe this testimony is eliciting in any way a Fifth Amendment issue, and based on your offer, I will inform him that the Fifth Amendment does not apply to the testimony that is being sought to be elicited and I will order him to testify or be held in contempt. And I will let him know that he can purge that contempt if he decides at some point to testify. I will inform him that the contempt would be consecutive to anything else, but then his [previous] statement if he does not testify cannot be introduced.

N.T., 4/10/17, at 12-13.

The Commonwealth then set forth its offer of proof. The trial court determined that, based upon this offer, Dickey could not legitimately assert his Fifth Amendment right not to testify in the murder case.

Dickey again took the stand, outside the presence of the jury, and the trial court informed him that there would be nothing in his proposed testimony that would incriminate him. The trial court further ordered Dickey to answer the questions posed by the Commonwealth or be held in contempt of court. Dickey still refused to testify. The trial court then explained to Dickey that it was finding him in contempt, but it would postpone sentencing him so he would still have the opportunity to testify should he change his mind.

The murder trial ended with a guilty verdict, but Dickey never testified. As a result, the trial court scheduled a hearing where Dickey's counsel could attend and present any defenses or additional information to the trial court, before the court sentenced Dickey for contempt.

The trial court held this hearing on May 1, 2017. The Commonwealth entered the pertinent excerpt from the murder trial where Dickey refused to

testify. The Commonwealth then summarized the relevant proceedings and rested.

Dickey then took the stand and testified that he met with detectives and attorneys for the Commonwealth regarding the murder trial on multiple occasions. He further testified that they reviewed his previous statements with him, and even conceded that they purchased clothes for him to wear at the murder trial. However, Dickey ultimately confessed that he did not testify because he was worried about his family's safety.

The Commonwealth then called Detective Brett Hinterliter in rebuttal. He testified that he had met with Dickey multiple times, including the Friday before the murder trial was to begin. Detective Hinterliter stated that Dickey was to testify that he had seen the murder defendant on the night of the shooting and that the defendant was wearing a grey sweat suit. According to the detective, the Commonwealth believed this testimony to be important because Dickey was one of the few witnesses who could place the defendant near the scene before the shooting while wearing a grey sweat suit. Detective Hinterliter testified that, although Dickey may have appeared nervous during their meetings prior to trial, he never stated to the detective, or any representative of the Commonwealth, that he was afraid to testify out of fear for himself or his family.

After hearing the arguments of counsel, the trial court found Dickey in contempt, and ultimately sentenced him to three to six months in prison,

consecutive to any sentence Dickey was then serving. This direct appeal followed. Both Dickey and the trial court have complied with Pa.R.A.P. 1925.

Dickey raises the following issue:

1. Did the Trial Court err in finding that [Dickey] was in contempt of Court pursuant to 42 Pa.C.S.A. §4132(3) as [he] did not have the intent to obstruct the administration of justice, nor did [his] conduct obstruct the administration of justice, nor hamper the efforts of the prosecution?

Dickey's Brief at 4.

Our standard of review is as follows:

We have held that in considering an appeal from a contempt order, we place great reliance on the discretion of the trial judge. Each court is the exclusive judge of contempts against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs. In cases of direct criminal contempt, that is, where the contumacious act is committed in the presence of the court and disrupts the administration of justice, an appellate court is confined to an examination of the record to determine if the facts support the trial court's decision.

*Commonwealth v. Moody*, 46 A.3d 765, 771 (Pa. Super. 2012) (citation omitted), *reversed on other grounds*, 125 A.3d 1 (Pa. 2015).

A court's power to impose a summary punishment of contempt is as follows:

**§ 4132. Attachment and summary punishment for contempt**

The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:

- 5 -

(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.A. § 4132.

Dickey claims that the trial court should not have found him in contempt pursuant to section 4132(3) because he did not have the intent to obstruct justice, and that his conduct neither obstructed the administration of justice, nor hampered the efforts of the prosecution. According to Dickey, he had expressed a reluctance to testify before the murder trial, and "his failure to testify did not change or impact the Commonwealth's prosecution strategy." Dickey's Brief at 10.

Our Supreme Court has summarized:

One is guilty of contempt when his conduct tends to bring the authority and the administration of the law into disrespect. Refusal to obey a court order, which occurs in the presence of the court, is contemptuous conduct and may result in a finding of direct [criminal] contempt. An individual may be found in contempt for refusing to testify after being ordered to do so by the court. That individual may not be held in contempt if the refusal to testify is based upon a legitimate exercise of the privilege against incrimination.

\*\*\*

In the first instance, the trial judge must evaluate the use of the privilege against self-incrimination to determine whether that proposed use is real or illusory. A trial court's ruling regarding the application of the privilege will not be

disturbed on appeal absent a showing of an abuse of discretion.

***Commonwealth v. Long***, 625 A.2d 630, 633-34 (Pa. Super. 1993).

"A contemnor acts with wrongful intent if he knows or should reasonably be aware that his conduct is wrongful." ***Commonwealth v. Falana***, 696 A.2d 126, 129 (Pa. 1997) (citation omitted). "In determining an offender's mental state, a court looks to his conduct and the surrounding circumstances." ***Id.***

Here, the trial court first found that Dickey possessed the requisite intent to obstruct the proceedings:

> After hearing the conflicting testimony from [Detective] Hinterliter and Dickey, the trial court found [the detective's] testimony that Dickey never indicated his fear or unwillingness to testify prior to trial, to be credible. As such, the trial court afforded no credibility to Dickey's testimony that he indicated to members of the prosecution, including [Detective] Hinterliter, that he was afraid and would be unable to testify. As set out by [the Pennsylvania Supreme Court], the requisite intent in an contempt proceeding is satisfied where the defendant knows or should reasonably be aware that his conduct is wrongful and need only have intent to obstruct the proceedings.
>
> Here, Dickey never indicated that he would not testify and never indicated his alleged fears. Instead, Dickey indicated to the Commonwealth that he planned to cooperate and even gave [Detective] Hinterliter his clothing sizes so that [the detective] could buy him clothing to wear at trial. Then, at trial, Dickey refused to testify by asserting his Fifth Amendment rights. The trial court instructed the Commonwealth to give an offer of proof as to the contents of Dickey's testimony and, after determining that nothing in Dickey's testimony would incriminate [him], ordered Dickey to testify. However, Dickey still refused even after being informed by the trial court that he could be held in contempt if he refused to testify. At no time during [the murder] trial did Dickey ever indicate that he was in fear. Thus, Dickey's

refusal to testify based on an illusory assertion of his Fifth Amendment rights even after being instructed by the trial court to testify, coupled with his past indications to the Commonwealth that he was willing to testify, prove that Dickey knew of should have been reasonably been aware that his conduct was wrongful. That is, Dickey had the requisite intent to obstruct the proceedings during [the murder] trial.

Trial Court Opinion, 7/10/17, at 9-10 (citation omitted).

Our review of the record supports the trial court's conclusions. We cannot disturb the credibility determinations made by the trial court as fact finder, as this determination was within its exclusive discretion. *Moody*, *supra*.

The trial court also found that Dickey's refusal to testify actually obstructed the proceedings and/or the administration of justice. First, the trial court concluded that the record refutes Dickey's claim that his conduct only caused a few minutes delay in the proceedings. We agree. Our review of the record reveals that Dickey's refusal caused the court to call several sidebars, jury recesses, and to hold several proceedings without the jury present. In addition, the trial court found that Dickey's refusal to testify adversely affected the prosecution of the murder trial:

At hearing on May 1, 2017, the Commonwealth indicated that Dickey would have testified that he saw [the murder defendant] wearing an all grey sweatsuit shortly before the shooting and that [the murder defendant] was the only one wearing an all grey sweatsuit on the night in question. The Commonwealth expected this testimony to support the testimony of the only eyewitness to the shooting. [Detective] Hinterliter also testified that there were only three witnesses whose testimony would corroborate that of

the eyewitness. Those three witnesses included one woman who did testify at [the murder] trial, [Dickey] and another woman who could not be located and did not appear to testify at [the murder] trial. Thus, although any one of these alone may not have risen to the level of actually obstructing the proceedings, taken together, Dickey's refusal to testify during [the murder] trial clearly obstructed the proceedings and the administration of justice such that the fourth element [of] 42 Pa.C.S.A. §4132(3) was met.

Trial Court Opinion, 7/10/17, at 11-12 (citation omitted).

Once again, our review of the record supports the trial court's conclusions. Although the Commonwealth ultimately achieved a guilty verdict in the murder trial, the record establishes that Dickey's refusal to testify adversely affected the prosecution's strategy in the murder trial. At the contempt hearing, Detective Hinterliter testified that the prosecution did not "reach out to any [other witness] at that point because we were already in the midst of the second day of trial. And to try to go out and prep other individuals whose statements did not have as much substantial information in them to bring them, it would have been difficult." N.T., 5/1/17, at 16. "There is no requirement that in order for a witness to be convicted of contempt, he must completely 'thwart' a case." *Commonwealth v. Tirado*, 409 A.2d 392, 396 (Pa. 1979). Thus, even though the murder defendant was found guilty, and there was other evidence the Commonwealth could have presented, Dickey's refusal to testify still constituted contempt. *Id.*

Finally, the cases cited by Dickey to support his claim on appeal are easily distinguishable as they involved a contempt finding against counsel for one of the parties or the criminal defendant himself. Dickey cites no case law

involving a contempt finding relating to a witness's refusal to testify at trial. *Compare*, *e.g.*, *Tirado*, 409 A.2d at 396 (holding that the wife's evasiveness as a witness, which ultimately resulted in the dismissal of charges against her husband, warranted the exercise of judicial power to punish for contempt).

In sum, for all of the above reasons, the trial court did not commit an abuse of discretion or error of law in finding Dickey in direct criminal contempt, and sentencing him for this conduct.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/9/2018